### SANDERS v. SANDERS.

Opinion delivered September 27, 1920.

1. TENANCY IN COMMON—HEIRS AT LAW.—The children and heirs at law of a land owner on his death become tenants in common of the land.

2. TENANCY IN COMMON—PURCHASE AT TAX SALE BY COTENANT.—A tenant in common can not add to or strengthen his title as against his cotenants by purchasing the title to the entire property at a tax sale or by purchasing it from a stranger who purchased it at tax sale.

3. TENANCY IN COMMON—POSSESSION BY ONE COTENANT.—Possession of land by one tenant in common after he acquired a tax title and commenced to pay taxes thereon would be construed as the common possession of all the tenants in common until he did some act of ouster or notified the others that his possession was exclusive.

4. TENANCY IN COMMON—EFFECT OF TAX PURCHASE.—Where the record shows that a tenant in common purchased an outstanding tax title for the benefit of all the tenants in common, he stands in relation of trustee for his cotenants.

5. TENANCY IN COMMON—REDEMPTION BY COTENANT.—Evidence held to sustain a finding that a redemption of land held in common by one of the cotenants was for the benefit of all the tenants in common.

6. TENANCY IN COMMON—REDEMPTION BY COTENANT.—Where a tenant in common redeemed the land from a tax sale, he could not claim it as against his cotenants by two years' adverse possession; to acquire title by adverse possession would require seven years' adverse possession.

Appeal from Miller Chancery Court; *James D. Shaver,* Chancellor; reversed.

### STATEMENT OF FACTS.

Appellants brought this suit in equity against appellees to have appellees declared as trustees of both appellants and appellees to a certain tract of land and for partition of the same. The facts are as follows:

W. B. Sanders originally owned 120 acres of land in Miller County, Arkansas. He exchanged 80 acres for the 120 acres of land in controversy. He died intestate in 1903, owning and in possession of the 120 acres of land involved in this suit. He left surviving him seven children and his widow. By agreement between the children, the land involved in controversy was turned over to the widow for her lifetime. She lived on the land a few years and then rented it out and lived with her children or grandchildren. Her sons looked after the land for

her. She let the land forfeit for taxes for the years 1910 and 1911. Eighty acres were sold to C. M. Blocker at tax sale, and a tax deed was executed to him on June 2, 1911. On October 1, 1915, Blocker executed a deed to W. N. Sanders to the eighty acres. Forty acres of the land in controversy were forfeited to the State, and W. N. Sanders acquired title from the State in the latter part of the year 1915. J. L. Sanders, a son of appellee W. N. Sanders, went into possession of the land under his father, and they paid taxes on it thereafter.

It was shown by appellants that W. N. Sanders had told some of them that he had redeemed the land from the tax sale, and they did not know that he was claiming title to the land in himself or his son. This testimony will be more particularly stated or referred to in the opinion.

The court found that W. N. Sanders and J. L. Sanders are the owners of the land in controversy and had paid taxes on it since the latter part of the year 1915 and it was decreed that appellants' complaint be dismissed for want of equity. This suit was commenced on the 31st day of May, 1919, and the final decree was entered of record on April 10, 1920. The case is here on appeal.

*M. E. Sanderson* and *G. G. Pope,* for appellants.

1. W. N. Sanders was a cotenant with the other heirs, appellants, and his redemption of the lands inured to the benfit of all the cotenants; he was a trustee *ex maleficio.* 92 Ark. 59; 128 Ark. 610; 133 *Id.* 441.

2. There is no question of title by limitation in this case. The widow, Sophia S. Sanders, did not die until June 11, 1918, and this suit was brought May 31, 1919, and Walt N. Sanders did not make his claims known until after his mother died. The widow was a life tenant, and the statute of limitations did not commence to run until the death of the life tenant. Her possession was not adverse. 126 Ark. 6; 116 *Id.* 233. The tax purchase was a mere redemption and not color of title even. 133 Ark.

442. The possession of one cotenant is the possession of all. 128 *Id.* 605.

3. The son, Jesse L., was not a *bona fide* purchaser for value. 68 Ark. 162; 46 *Id.* 542. He could not claim adversely until he notified his cotenants that he claimed adversely. 128 Ark. 605. .

*J. M. Carter,* for appellees.

1. Appellants have failed to file a proper abstract and moves to affirm for failure to comply with rule 9.

2. On the merits, contends that appellees had the right to buy the lands; that there was no fraud or concealment in his purchase, and that appellants are barred by limitation. J. L. Sanders, by hard labor and attention to business, has improved these lands from a worthless estate to a highly cultivated estate, and plaintiffs want the fruit of his labor and expense without paying the price.

HART, J. (after stating the facts). The decision of the chancellor was wrong. Appellants and appellees were the children and sole heirs at law of W. B. Sanders, who owned the land in controversy at his death in 1903. The children agreed that his widow should have the land during her lifetime. Appellants and appellees were tenants in common of the land.

In *Cocks* v. *Simmons,* 55 Ark. 104, it was held that a tenant in common of land can acquire no title to the interest of his cotenants by purchase at a tax sale of the whole for delinquent taxes, and that his purchase amounts to no more than the payment of the taxes, and gives him no right except to demand contribution from his cotenants. The rule is based upon a community of interest in a common title creating such a relation of trust and confidence between the parties that it would be inequitable to permit one of them to do anything to the prejudice of the others in reference to the property.

In application of the rule in the subsequent case of *Inman* v. *Quirey,* 128 Ark. 605, it was held that a tenant in common can not add to or strengthen his title by pur-

chasing the title to the entire property from a stranger who has purchased the premises at a tax sale, as the law will not allow that to be done indirectly which can not legally be accomplished directly. Therefore, W. N. Sanders did not acquire any title to the property by the mere purchase from the State, or from Blocker, who had purchased at the tax sale.

It is true that Sanders went into possession of the land after he acquired the tax title and commenced to pay the taxes thereon. Such possession, however, would be construed as the common possession of all the tenants in common until W. N. Sanders did some act of ouster or notified the others that his possession was exclusive. There is no proof in the record that W. N. Sanders openly asserted any exclusive right to the land, or that his son, J. L. Sanders, was a *bona fide* purchaser of said land from his father.

On the contrary, some of the appellants testified that it was the intention of W. N. Sanders to redeem the land from the tax forfeiture for the benefit of himself and his tenants in common, and that he so informed them at the time he acquired the tax title. There is nothing in the record to show that W. N. Sanders denied the rights of his tenants in common and claimed the whole property and notified them that he was holding it exclusively for his own benefit.

The record shows that he intended to act for the benefit of all the tenants in common in purchasing the outstanding tax title. Therefore he stands in a fiduciary or trust relation to the other tenants in common, and the law will hold him to be, not the sole owner of the land, but a tenant in common with the others. In other words, under the facts of this case, the law regards his purchase as being for the common benefit of all and adjudges him to be a tenant in common with appellants.

It follows that the decree will be reversed and the cause will be remanded for further proceedings in ac-. cordance with this opinion, and then for the partition of

the land according to the respective interests of the parties.

OPINION ON REHEARING.

HART, J.    In his motion for a rehearing counsel for appellee claims that the court erred in finding the facts to be that Walt N. Sanders redeemed the land from tax sale and did not assert any exclusive right to it. .

We have again examined the record and find that the statement we made was correct.    J. H. Ramsey, a brother-in-law of Walt N. Sanders, testified that he told Walt N. Sanders that he thought one of the boys ought to redeem the land in as much as they had been looking after it for their mother.    Sanders replied that he had been thinking about it, but did not know.    The next time Sanders talked with Ramsey, he told the latter that he had redeemed the land and that it cost him $91 to do it.

Charles F. Sanders, a brother of Walt N. Sanders, testified that the latter told him that he thought he would redeem the land and subsequently told him that he had redeemed it.    Walt N. Sanders then asked Charles F. Sanders what he would take for his share in the land.

Other heirs testified that Walt N. Sanders negotiated with them about the purchase of their interest in the land.    No denial of this testimony was attempted to be made by Walt N. Sanders, and the record shows that his son must have known what he was doing in the premises.    Therefore the testimony was ample to sustain a finding that Walt N. Sanders redeemed the land from tax sale.    Hence he could not claim the land by two years' adverse possession under a tax deed because his tax deed constituted a redemption of the land for himself and the other tenants in common.    If subsequently in 1916 Walt N. Sanders, or his son, concluded that they would acquire title to the land by adverse possession, they would have to hold it for seven years, and this they did not do.    They could not in 1916 assert any claim of the land by virtue of the tax title and claim title to the land after holding for two years because, as we have

already seen, their tax title amounted to nothing more than a redemption of the land.

It follows that the motion for a rehearing will be denied.