## Tompkins *v.* Tompkins.

### Opinion delivered February 6, 1922.

1. HOMESTEAD—DEATH OF ENTRYMAN—RIGHT OF WIDOW.—Where one entering public lands as a homestead dies before making final proof, his widow is entitled to make such proof and obtain a patent from the United States.

2. ADVERSE POSSESSION—HUSBAND AND WIFE.— A husband or wife cannot obtain a tax title in opposition to the other when they are in joint possession of the land.

3. LOST INSTRUMENT—SUFFICIENCY OF EVIDENCE.—Evidence *held* to establish the execution of a lost deed.

4. HUSBAND AND WIFE—CONVEYANCES BETWEEN.—A deed to land from a wife to her husband conveys an equitable title.

5. HUSBAND AND WIFE—CONVEYANCES BETWEEN.—Evidence *held* to establish that a deed from a wife to her husband was free from any undue influence on the part of the latter.

6. TENANCY IN COMMON—PURCHASE AT TAX SALE BY CO-TENANT.— A tenant in common cannot add to or strengthen his title by purchasing the title to the entire property at tax sale, and possession of the land thereafter.

Appeal from Sharp Chancery Court, Southern District; *H. J. Radcliff,* special Chancellor; reversed and affirmed.

STATEMENT OF FACTS.

Appellees brought this suit in equity against appellant to cancel and set aside deeds made to him to two

tracts of land, and for an accounting of the rents and profits of the same. Appellant defended on the ground that he had title to the lands in question. The material facts necessary to decide the issues raised by the appeal, briefly stated, are as follows:

W. M. Tompkins died in Sharp County, Arkansas, in the year 1900, owning several tracts of lands in said county, including the two forty-acre tracts which are the basis of this lawsuit. He left surviving him Lurena A. Tompkins, his widow, and appellees, who are his children and heirs at law. Yancey Tompkins was a minor at the death of his father, and was only twenty years of age when this suit was brought on the 5th day of April, 1916. In February, 1900, W. M. Tompkins entered, as an additional homestead under the laws of the United States, forty acres of land involved in this controversy, which was situated adjoining the land on which he lived with his wife and children and which constituted his homestead. The residence of W. M. Tompkins was near the boundary line between the tract on which it was erected and the forty-acre tract in controversy called the homestead tract. The boundary between the two tracts ran through his yard and up to the porch of his dwelling house. His garden, orchard, a well, and some outhouses were erected on the forty-acre tract in controversy. Tompkins entered the forty acres in controversy as an adjoining homestead in February before he died in May, 1900. During the latter part of the year 1902, Lurena Tompkins, the widow of W. M. Tompkins, deceased, married T. J. Tompkins, a nephew of her first husband. T. J. Tompkins was appointed administrator of the estate of W. M. Tompkins, deceased, in December, 1902, and as such administrator took charge of all the real and personal property belonging to his decedent's estate. On the 27th of June, 1904, T. J. Tompkins was duly appointed guardian of the estate of Yancey Tompkins and Bama Tompkins, minor children of W. M. Tompkins, deceased. W. M. Tompkins resided on

his homestead at the time of his death. His widow and minor children continued to reside there until she married T. J. Tompkins in the latter part of 1902. After that time they all resided there until Lurena Tompkins died in 1912. In April, 1906, Lurena Tompkins, the widow of W. M. Tompkins, deceased, perfected her proof to the homestead on the homestead forty-acre tract in controversy and secured a patent thereto from the United States. The said tract of land was forfeited for non-payment of taxes for the year 1908, and T. J. Tompkins became the purchaser at the tax sale held in June, 1909. He obtained a certificate of purchase, and a clerk's tax deed was issued to him on the 15th day of June, 1911. He testified that subsequently to his purchase of the land at tax sale his wife made a deed to said land to him. The testimony on this particular point will be stated more at length in the opinion.

The record shows that W. M. Tompkins at the time of his death owned other lands which he had purchased from Wm. McKinley, and the testimony on this point will be stated more particularly under an appropriate heading in the opinion. Forty acres of these lands were sold at tax sale in 1906, and T. J. Tompkins became the purchaser thereof at said sale. Subsequently he received a clerk's tax deed therefor.

W. M. Tompkins left surviving him his widow and five children. One of his daughters sold her interest in his estate to her mother and the other four children. In July, 1902, Dora Porter, another one of his daughters, sold and conveyed her interest in his estate to T. J. Tompkins. Dean Tompkins, one of the children of W. M. Tompkins, has been dead five years and died at the age of twenty-three years.

The testimony with regard to the rents and profits from the two forty-acre tracts in controversy will be stated and referred to more in detail in the opinion.

It was decreed in the chancery court that Yancey Tompkins recover from T. J. Tompkins the sum of

$651.97 as a trust fund derived from the rents and profits of the two tracts of land in controversy. It was further decreed that Yancey Tompkins have a two-thirds interest in the two tracts of land in controversy, and that T. J. Tompkins be decreed a one-third interest therein.

T. J. Tompkins has duly prosecuted an appeal to this court.

*John C. Ashley,* for appellant.

The lands in NE. NW. 31-17-4 were entered from the United States by W. M. Tompkins, who died shortly thereafter, and his widow made final proof and received patent therefor in her own right, as she had the right to do, and the land was not a part of the estate of W. M. Tompkins.

As to the lands in SW. SE. 19-17-4, no color of title is shown to have been in W. M. Tompkins, and appellees have failed to establish title in themselves. 57 Ark. 97.

If appellees had title to the lands in controversy they are barred by the statute of limitations. C. & M. Digest, 6947; 59 Ark. 460; 53 Ark. 418; 58 Ark. 151; 92 Ark. 30. As to the second tract described above, appellees (with the exception of Yancey Tompkins) are also barred by the seven-year statute. C. & M. Dig., 6942.

The court erred in holding appellant liable to Yancey Tompkins for any sum. Upon the filing of his final report as administrator, guardian and curator, he was discharged, and there is no showing that the sums adjudicated in favor of appellee were not included in that report. The probate court judgment is not subject to collateral attack. 92 Ark. 611; 73 Ark. 612; 52 Ark. 341.

*David L. King,* for appellee.

Appellee is seeking to enforce a legal remedy, and the pleas of laches and limitation are wholly inapplicable. 100 Ark. 399; 70 Ark. 371.

Appellant was a tenant in common, and his redemption from the tax sales only gave him the right to demand contribution from his co-tenants, not title to the

property. The trustee of an express trust cannot acquire title at a tax sale. 84 Ark. 557; 129 Ark. 149; 78 Ark. 111; 30 Ark. 95; 49 Ark. 242; 39 Ark. 573; 69 Ark. 539; 75 Ark. 184; 139 Ark. 206.

As to the tract known as the homestead forty, this continued to be the homestead of the widow and children after the death of W. M. Tompkins, 37 Ark. 316; 29 Ark. 633. Homestead is not subject to partition. 31 Ark. 145; 51 Ark. 429. The statute of limitation did not run against appellee, who was a minor. The possession of one holding under a life tenant is not adverse to the remainderman until the death of the life tenant. 58 Ark. 510; 129 Ark. 342.

The money judgment in favor of appellee should have been for a larger sum even than that awarded him.

HART, J. (after stating the facts). We will first discuss the rights of the parties to what is called the additional forty acres. It will be noted that W. M. Tompkins had his dwelling house and homestead on an adjoining forty acres of land. He entered the forty acres in question as an additional homestead under the laws of the United States in February, 1900, prior to his death in May of the same year. He dug a well and used the forty-acre tract in controversy as a part of his homestead. After his death his widow made final proof and obtained a patent from the United States to the forty acres in controversy in 1906.

In *McCune v. Essig,* 199 U. S. 382, the Supreme Court of the United States held that the widow of the entryman is first entitled to complete the entry and obtain a patent, and that a State law is not competent to change this provision and give the children of the entryman an interest paramount to that of the widow. So it will be seen that when the patent was issued to Lurena Tompkins in 1906, she took an absolute title to the land free from any claim of her children. After the patent was issued to her the land was forfeited to the State for non-payment of taxes, and T. J. Tompkins became the

purchaser at the sale. He now claims title by virtue of a clerk's tax deed which was afterwards issued to him. At the time T. J. Tompkins purchased the land at the tax sale he was the husband of Lurena Tompkins,. and they occupied the land jointly as her homestead.

In *Herrin* v. *Henry,* 75 Ark. 273, the court said that the rule is thoroughly settled that a husband or wife can not obtain.a tax title in opposition to the other when they are in joint possession of the land. This is a salutary rule, and prevented T. J. Tompkins from obtaining any title to the homestead forty-acre tract by virtue of his purchase thereof at the tax sale after his wife had obtained a patent to the land from the United States.

Again it is contended by counsel for appellant that the latter obtained title to the forty-acre homestead tract by purchase and conveyance from his wife. In this contention we think counsel is correct. It appears from the record that the dower interest of Lurena Tompkins in the estate of W. M. Tompkins, deceased, was set off to her in 1910. According to the testimony of T. J. Tompkins, the children of. W. M. Tompkins, deceased, raised objections to the title to the said forty-acre tract being in appellant when the widow's dower was being set off in the estate of W. M. Tompkins, deceased. They claimed that the land belonged to the estate, and not to T. J. Tompkins by virtue of his purchase at the tax sale. Then Lurena Tompkins sold the land to her husband for $50 and T. J. Davidson wrote the deed from Lurena Tompkins to T. J. Tompkins to said land and took her acknowledgment to it. The deed is now lost.

According to the testimony of T. J. Davidson, he represented Mrs. Tompkins in the settlement of her dower interest in the estate of W. M. Tompkins, deceased. Mrs. Tompkins told him that she desired to give her husband, T. J. Tompkins, the homestead forty-acre tract in question. Davidson prepared a deed to that effect, and Lurena Tompkins acknowledged the deed. He stated that he thought that he delivered the deed to her, and

that her husband was present when he did so. It is true that his recollection was that this happened in 1902, which was before the United States had issued a patent to the land to her. It is evident that the witness was mistaken as to the date; for he states that he prepared the deed while he was representing Mrs. Tompkins in having her dower set apart to her, and while that suit was in progress. The records of the probate court show that her dower was set apart to her in the latter part of 1910. These facts and circumstances are sufficient to show that a deed had been made by Lurena Tompkins to T. J. Tompkins. *Steward* v. *Scott,* 57 Ark. 153. This was after the widow of W. M. Tompkins, deceased, had acquired an absolute title to the land by obtaining a patent therefor from the United States. She then had a right to convey the land to her husband, and the deed from herself to him at the time it was executed conveyed an equitable title to him in the land. *Mathy* v. *Mathy,* 88 Ark. 56, and *Wood* v. *Wood,* 116 Ark. 142.

The testimony of T. J. Tompkins, in connection with that of T. J. Davidson, who is entirely disinterested, shows that the wife wished to convey the forty-acre homestead tract in controversy to her husband. At the time she was having her dower in her first husband's estate set apart to her, and their children were claiming that her second husband had no title to the land by virtue of his purchase at the tax sale, and that the land still belonged to their father's estate. With the knowledge of these facts, the wife told her attorney that she wished to give the land to her husband and had him to prepare a deed for that purpose. The testimony shows that the transaction was free from any undue influence on the part of her husband, and is, we think, sufficient to establish the fact that the deed was made. There is nothing in the record to contradict this testimony except the fact that the deed is lost or missing, and we do not think that is sufficient. The testimony of the husband and of the attorney for the wife is positive, and es-

tablishes the fact of the conveyance by the wife to the husband of an equitable title in the land. The equitable title being in appellant, he is entitled to the possession of the land, and the court erred in divesting the title out of him and investing it in appellee.

As to the remaining forty acres, the decision of the chancery court was correct. The record shows that Wm. McKinley originally owned this and other forty-acre tracts adjoining it. Various witnesses testified that they lived near the land, and that W. M. Tompkins had possession of it and claimed it as his own. After appellant married the widow of W. M. Tompkins, he became the guardian of the minor children of W. M. Tompkins and also administrator of his estate. W. M. Tompkins died, leaving five children as his sole heirs at law. One of these children sold her interest in her father's estate to her mother and the other children. After this, another one of the children of W. M. Tompkins sold and conveyed to appellant her interest in her father's estate. She made the conveyance to appellant in 1902, and he thereafter became a tenant in common with the other children. As such his purchase of the land at the tax sale amounted to no more than a redemption of the land.

In *Sanders* v. *Sanders*, 145 Ark. 188, the court held that a tenant in common can not add to or strengthen his title as against his cotenants by purchasing the title to the entire property at a tax sale. The court further held that such a proceeding amounted to no more than a redemption of the land from the tax sale, and that possession of the land thereafter by such tenant in common would be construed as the common possession of all the tenants in common until he did some act of ouster or notified the others that his possession was exclusive. In discussing the question the court said:

"In *Cocks* v. *Simmons*, 55 Ark. 104, it was held that a tenant in common of land can acquire no title to the interest of his cotenants by purchase at a tax sale of the whole for delinquent taxes, and that his purchase amounts

to no more than the payment of the taxes, and gives him no right except to demand contribution from his cotenants. The rule is based upon a community of interest in a common title creating such a relation of trust and confidence between the parties that it would be inequitable to permit one of them to do anything to the prejudice of the others in reference to the property."

The record shows that Yancey Tompkins was only twenty years of age at the time he brought this suit. Therefore there could be no question of ouster against him, and the chancery court was right in decreeing him a two-thirds interest in said tract of land and his part of the rents and profits thereof.

In making an accounting between the parties the court rendered judgment in favor of Yancey Tompkins against T. J. Tompkins in the sum of $651.97. In doing this the court made appellant account for the rents and profits from both tracts, which was wrong. $128.87 of this amount came from what we denominate the homestead forty. As we have already seen, this tract belonged to appellant, and it follows that the court erred in making him account for the rents and profits therefrom.

The court correctly found that appellant owed Yancey Tompkins $523 for cedar timber cut from the land which appellant owned as tenant in common with Yancey Tompkins and the other appellees. This part of the decree was correct. The result of our views is that the decree of the chancellor vesting title in Yancey Tompkins to a two-thirds interest in the homestead forty-acre tract described as the NE¼ of the NW¼, section 31, township 17 N, range 4 West, is erroneous, and for that error the decree in this respect will be reversed, and the cause remanded with directions to the chancellor to render a decree dismissing the complaint of appellees with reference to this tract for want of equity.

The chancellor is also directed to render a decree in favor of Yancey Tompkins against T. J. Tompkins for the sum of $523, instead of $651.97. With reference

to the decree with regard to the other forty-acre tract described as the SE¼ of the SW¼ of section 19, township 17 N, range 4 West, the decree is affirmed.

It is so ordered.