SPIKES *v.* BELOATE.

4-7159                                                            175 S. W. 2d 579

Opinion delivered November 15, 1943.

*Blackford & Irby,* for appellant.

*E. H. Tharp,* for appellee.

KNOX, J. At the time S. N. Pitzele & Co. was adjudicated a bankrupt, it held title to lot 9 and south half of lot 10, block 18, of the original town of Walnut Ridge, Arkansas. Appellant W. E. Spikes and W. E. Beloate,

Sr., husband of appellee, each sought to purchase the property at the sale conducted by the trustee in bankruptcy. Mr. Spikes testified: "And at this sale I was buying the lots; and so Mr. Beloate, he came to me and asked me to not run the bid up any further where it would be any more expense to either one of us and we would buy it in jointly, to which I agreed and the lot was bid in, and the title to be vested in the two of us, and in the end it was vested in his wife and my wife." Mr. Beloate testified as follows: "On October the 16, 1933, at the bankruptcy sale of S. N. Pitzele & Company, Inc., I bid in for K. O. Beloate the lots in controversy at this sale through W. E. Beloate, Jr. I agreed to deed to W. E. Spikes one-half of the lots for one-half of the consideration. We had to pay for it the sum of $260 for the lots, $130 each. On the 30th day of October, 1933, I executed to Mrs. W. E. Spikes the deed, which has not been recorded. The deed from the bankruptcy trustee to my wife . . . disappeared . . . I do not know where it is." Appellee is of the opinion that the title was acquired from the trustee in 1931 or 1932 and that the date fixed by Mr. Beloate, to-wit—October 16, 1933—was incorrect. At the time the property was purchased from the trustee in bankruptcy the general taxes had not been paid for several years and the property had been certified to the State. Mr. Beloate testified that he redeemed from the State for the benefit of and in the names of Mrs. Beloate and Mrs. Spikes; that he delivered the deed from Mr. Beloate to Mrs. Spikes and also the redemption certificates to appellant, and called on him to pay the sum of $95, which was one-half of the amount Beloate had expended to effect redemption. He further testified that appellant kept the deed and redemption certificates for several months and after being repeatedly urged to make payment returned both the deed and the redemption certificates to Beloate, but failed and refused to make payment of one-half of the moneys so expended by Beloate to effect redemption. The exact date on which Mr. Beloate redeemed this property does not appear in the record, appellant in his brief fixes the date as September 29, 1934. The taxes for 1933 were not included in the

amount paid to redeem, and later the property again forfeited to the State for the taxes of 1933.

Thereafter the State, acting under the authority of Act 119 of 1935, instituted suit in the Lawrence chancery court to confirm and quiet its title and, on January 5, 1939, no defense having been interposed, the court confirmed the State's title. The formal decree was not actually spread of record until November 27, 1940, when it was entered *nunc pro tunc*. On March 6, 1939, appellee, K. O. Beloate, purchased said property from the state and sales deed No. 361 was issued conveying to her the State's title. This deed was lost and on May 28, 1941, duplicate sales deed was issued. It is alleged in appellant's cross-complaint that all of the described property was situated within the boundaries of Water and Sewer District No. 2 of Walnut Ridge, Arkansas, and also the Village Creek Drainage District, and the south half of lot 10 was included within Street Improvement District No. 2, and lot 9 was included within Street Improvement District No. 1, Walnut Ridge, Arkansas. It was also alleged in the cross-complaint that each of these improvement districts had prosecuted suits to foreclose the lien for past-due assessments and each had purchased such property at the sales held as a result of the respective suits instituted and prosecuted by each such district. Appellant further alleged that he had purchased the title of each such district and obtained quitclaim deeds therefrom. At the trial of this cause quitclaim deeds executed by persons purporting to act for and in the name of each of these districts, conveying the respective titles to appellant were introduced in evidence, but there is nothing in the record showing how the various districts acquired title. The findings of fact and judgment of the trial court apparently assumed that (1) this property was included within these districts; (2) the districts had prosecuted to formal decree suits to foreclose the lien of certain past-due assessments; and (3) each district had purchased at the sale held in conformity with the decree entered in the respective suits so instituted by it. Appellee does not appear to question such facts on this appeal.

The arguments presented by her brief apparently accept such facts as being established.

The various quitclaim deeds from the respective improvement districts to appellant were all executed and delivered to him on February 21, 1940, the various considerations recited therein aggregate the sum of $350. In each of said deeds appear recitals to the effect that such deed cancels delinquencies for improvement district tax due the district to and including a certain date therein named. The deeds do not recite, and the record does not otherwise disclose, whether the consideration was the exact sum due such district for past-due taxes, penalty and cost.

On March 7, 1940, appellant paid the general taxes levied against this property for the year 1939, in the amount of $12.80. Later he leased such property to Paragould Poster Adv. Co. for the purpose of permitting it to erect a billboard thereon, which it did. Thereupon, appellee instituted this action, asserting title and right to possession, under and by virtue of her deed from the State. Appellant answered denying appellee's title, and by way of cross-complaint asserted title in himself by reason of the deeds from the improvement districts. The cause was submitted to the trial court, sitting as a jury. The court made findings of fact and conclusions of law to the effect that (1) title conveyed to appellee by the State was superior to the title conveyed to appellant by the various improvement districts; (2) rents received by appellant offset the general taxes paid by him; and (3) since the State's title had been confirmed, appellant could not recover the improvement district taxes paid by him to the various districts, and that no lien accrues to him on the property on account of the improvement district taxes so paid by him.

In conformity with such findings of fact and declarations of law judgment was entered in favor of appellee.

Seven assignments of error are set out in the motion for new trial, of which only three are argued in appellant's brief, as follows: The court erred in (1) holding

that the title acquired by appellee from the State was paramount to title acquired by appellant from the improvement districts; (2) in holding that appellee's purchase from the State was not a redemption for the benefit of herself and her co-tenant, and (3) in failing to adjudge a lien against said property in favor of appellant for improvement district taxes paid by him as consideration for the deeds from the various districts. Disposing of these issues, we shall disregard the order in which they are presented in the motion for a new trial.

Appellant contends that since appellee and appellant's wife were owners of this property as tenants in common the title which appellee acquired from the State inured to the benefit of both, and was nothing more nor less than a redemption. It is well settled that a tenant in common cannot add to or strengthen his title by purchasing title to the entire property at a tax sale, nor by purchasing it from a stranger who has purchased at such sale; that such purchase amounts to no more than a redemption, which inures to the benefit of the other tenants as well as himself, and confers no right upon such tenant so purchasing except to demand contribution from his cotenants. *Moore* v. *Woodall,* 40 Ark. 42; *Inman* v. *Quiry,* 128 Ark. 605, 194 S. W. 858; *Sanders* v. *Sanders,* 145 Ark. 188, 224 S. W. 732; *Thompkins* v. *Thompkins,* 151 Ark. 572, 237 S. W. 103; *Williams* v. *Anthony,* 182 Ark. 810, 32 S. W. 2d 817.

It is to be remembered, however, that if a tenancy in common existed in this land at all then it existed between Mrs. Beloate and Mrs. Spikes. For some reason difficult to understand Mrs. Spikes was not made a party to this litigation. It was begun and has been prosecuted throughout as a controversy solely between Mrs. Beloate and Mr. Spikes. Appellant was and is a stranger to the title which was held by Mrs. Beloate and Mrs. Spikes. Though a tenant in common cannot as against her cotenant acquire title to such cotenant's interest by purchase at tax sale, the title so acquired is good as against 750, 35 Am. St. Rep. 96. The rights of Mrs. Spikes, if any she has, in and to the title acquired by Mrs. Beloate under

the deed from the State can be asserted only by her and not by appellant. Since Mrs. Spikes is not a party to this litigation her rights, if any she has, can be in nowise affected or prejudiced by this proceeding. For the purpose of disposing of the issues between appellant and appellee we must proceed upon the theory that Mrs. Beloate, by deed from the State, acquired the whole title previously held by both herself and Mrs. Spikes.

The trial court held: ". . . that since the title in the State to the property had been confirmed by the chancery court in the State, for that reason the defendant, Spikes, should not recover the improvement taxes paid by defendant to the different districts, and that no lien accrues to the defendant on the property for the improvement taxes he has paid to the several districts from whom he obtained quitclaim deeds, as shown by the testimony herein."

As we understand it, the learned trial judge evidently took the view that the confirmation decree cut off the rights of all parties and had the effect of cancelling the liens of improvement districts for past-due assessments against the lands. Such is not in accord with previous decisions of this court. A decree confirming the State's tax title has the effect of suspending the enforcement of special improvement taxes against the lands during the time the title thereto remains in the State, but does not extinguish the lien of such taxes, which liens may be enforced when the lands return to private ownership. *Harris* v. *Little Red River Levee District No. 2*, 188 Ark. 975, 69 S. W. 2d 877; *Stringer* v. *Conway County Bridge Dist.*, 188 Ark. 481, 65 S. W. 2d 1071; *Miller* v. *Cache River Drainage District No. 2*, 205 Ark. 618, 170 S. W. 2d 371; *Turley* v. *St. Francis Co. Rd. Imp. Dist.*, 171 Ark. 939, 287 S. W. 196.

A case very similar to the one at bar is that of *Watson* v. *Anderson*, 201 Ark. 809, 147 S. W. 2d 28. There, as here, the land had forfeited for general taxes, and the title of the State had been confirmed. The State's title was purchased by appellant, Watson. Appellee, Anderson, had acquired his title by purchase from an improvement

district, which had purchased at its foreclosure sale held pursuant to decree declaring and enforcing a lien for improvement district assessments accruing to such district. Each party litigant was claiming superior title. We there held that Watson, by his purchase from the State, acquired the superior title and also the superior right of possession, but we added these words of qualification, "subject to the payment by him of the cost to appellee (Anderson) of the levee district title, with interest."

While appellee through her purchase from the State acquired a title which was superior to the title acquired by appellant by his purchase from the various improvement districts, it is clear from the decisions above referred to that the confirmation decree did not have the effect of cutting off the lien held by the various improvement districts for improvement district assessments, and it follows that by his purchase from these districts appellant acquired such liens and became subrogated to the rights of the improvement districts thereunder. "Recovery in ejectment, however, cannot be defeated by merely showing that the defendant has a lien against the property, since the possession may be awarded to the rightful claimant, and the lien still be allowed to stand." 28 C. J. S., § 43, p. 894. The rule is different where the lien held by the defendant carries with it also the right of possession. *Robinson* v. *Pringle,* 196 Ark. 219, 117 S. W. 2d 25.

The trial court in the case at bar, however, specifically held, "that no lien accrued to the defendant on the property for the improvement district taxes he has paid to the several districts." This holding and the judgment rendered in accordance therewith had the effect of forever barring appellant from asserting and enforcing the lien thus acquired by him through his purchase from the improvement districts. The court should have preserved the rights of appellant by providing that the judgment for possession granted to appellee was and should be without prejudice to the rights of appellant to seek the enforcement of such liens in a court of competent jurisdiction. The court erred in declaring that no lien accrued

to the defendant on the property for the improvement district taxes and failing to preserve appellant's rights in the manner above suggested, and for this error the judgment of the lower court should be reversed and the cause remanded for a new trial. It is so ordered.

ROBINS, J., dissents.