The Honorable Bill Porter State Representative P.O. Box 529 Clarksville, AR 72830
Dear Representative Porter:
This is in response to your request for an opinion on several questions involving lands certified to the State of Arkansas for non-payment of taxes, and procedures in connection with tax sales conducted by the Commissioner of State Lands. You have asked the following specific questions in this regard:
 1. Are Property Owner's Association Dues, Improvement District Special Assessments, Community Club dues, and other dues and fees charged by private communities such as Cherokee Village, Holiday Island, Hot Springs Village, Horseshoe Bend Estates, etc., extinguished by an Arkansas tax sale conducted by the Commissioner of State Lands for the State of Arkansas?
 2. Is a notice of a tax sale served by Certified Mail to the owner of record of the subject property adequate notice pursuant to Rule 4, Rules of Civil Procedure, State of Arkansas, when:
 a. Notice is served more than one year prior to the date of the actual tax sale;
 b. Notice is served to the owner of record at the time property was certified to state but no notice was served on subsequent owner or lienholder of record prior to the tax sale?
I have enclosed a copy of Attorney General Opinion Number 87-460 which addresses the general question of whether liens on property sold by the Commissioner of State Lands transfer to the new purchaser of the property or remain the obligation of the prior owner. While it was concluded therein that liens ordinarily do not transfer to the new purchaser, it must be recognized the Opinion Number 87-460 was issued in response to a general question and thus does not purport to address all specific instances in which liens may attach.
With respect to improvement district special assessments, there is Arkansas case law authority for the proposition that special improvement district taxes are not extinguished following certification of the lands to the State for non-payment of general taxes. An Arkansas Supreme Court ruling frequently cited in this regard [Turley v. St. Francis County Road Improvement District No. 4, 171 Ark. 939, 287 S.W. 196 (1926)] is based primarily upon a statute involving road improvement taxes which stated in pertinent part as follows:
 The tax so levied shall be a lien upon all the real property in the district from the time same is levied by the county court, and shall be entitled to preference over all demands, executions, encumbrances or liens whatsoever created, and shall continue until such assessments, with penalty and costs that may accrue thereon, have been paid.
Crawford Moses' Digest, 5433 (repealed); 171 Ark. at 939. The Court recognized that the words "all demands, executions, encumbrances or liens whatsoever created" did not refer to the State's paramount tax lien. Id., at 942. More significant for purposes of your inquiry, however, is the Court's statement: "But the words which follow unmistakably carry the meaning that the special taxes of the improvement district shall continue until fully paid, and are not extinguished." Id.
A review of statutory provisions governing the various types of improvement districts reveals language similar to that cited in the Turley case, supra, with respect to the district's lien for taxes. See, e.g., A.C.A. 14-90-805, 14-92-228, 14-93-119 and14-123-409 with respect to municipal improvement districts, suburban improvement districts, property owners' improvement districts, and levee improvements districts, respectively.
It thus seems clear that while the State is not required to discharge improvement district tax liens, an improvement district does not lose its lien because of certification of the lands to the State. Rather, the special improvement district lien may be enforced when the land returns to private ownership. See, e.g., Harris v. Little Red River Levee Dist. No. 2, 188 Ark. 976 [188 Ark. 975],69 S.W.2d 877 (1934); Terry v. Drainage District No. 6, Miller County, 206 Ark. 940, 178 S.W.2d 857 (1943); Spikes v. Beloate,206 Ark. 344, 175 S.W.2d 579 (1943). The court in Harris v. Little Red River, supra, at 978-979, expressed this precept as follows:
 The decree of confirmation does not relieve the purchaser from the State of payment of assessments because the sale to the State does not extinguish the lien. . . . [I]t is the duty of the purchaser to pay the districts' special improvement taxes in order to extinguish the liens of the districts for the payment thereof. . . .
The answer to your question with respect to the dues and fees of certain entities other than improvement districts requires a review of the particular bill of assurances or other document evidencing the contractual obligations which a purchaser of property may acquire. However, I believe that the conclusions drawn in Opinion Number 87-460 (attached hereto) will generally apply in those instances.
Your second question involves the notice of tax sale that is provided to an owner or record of real property. It should be initially noted that the adequacy of the notice must be considered in light of governing statutory provisions, as well as recognized constitutionally conferred rights, rather than Rule 4 of the Arkansas Rules of Civil Procedure.
Notice by certified mail to the owner of record is governed by A.C.A. 26-37-301 (Supp. 1987) which states as follows:
 (a) Upon receiving tax-delinquent lands, the Commissioner of State Lands shall notify the owner, at the owner's last known address, by certified mail of the owner's right to redeem by paying all taxes, penalties, interest, and costs, including the cost of the notice.
 (b) The notice to the owner shall also indicate that the tax-delinquent land will be sold at auction if not redeemed prior to the date of sale. The notice shall also indicate the sale date, and that date shall be no earlier than two (2) years after the land is certified to the Commissioner.
Thus, if the notice is mailed by the Commissioner of State Lands "upon receiving tax-delinquent lands," and the sale date is no earlier than two (2) years subsequent to the certification, it seems clear that at least one year will have elapsed between the notice and the sale. The questioned time frame therefore appears to be envisioned under the statute. It should also be noted that a notice of the sale is published in the county wherein the land is located, pursuant to A.C.A. 26-37-201 (Supp. 1987). It may reasonably be concluded that the notice by certified mail, wherein the sale date is specified, and the notice by publication prior to the sale together provide adequate notice. It is therefore my opinion that the answer to the first part of your second question is "yes".
The second part of this question involves the absence of notice to a subsequent owner or lienholder of record prior to the tax sale. It has come to my attention that your question with respect to lienholders has been raised in a case currently pending in the Chancery Court of Pulaski County. The long-standing policy of this office dictates that I refrain from addressing matters in litigation. Any attempt to address the substantive issues involved would, in this instance, violate that policy.
In response to your inquiry involving subsequent owners of record, it is my opinion that this is a factual question, within the province of the judiciary, to be decided on a case by case basis. The U.S. Supreme Court's decision in Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983) should be considered in this regard, wherein the Court concluded that a mortgagee was deprived of due process of law where he received neither personal service nor notice by mail of a tax sale. This case may be cited for the proposition that notice by publication will not be deemed sufficient where the name and address of an interested party is easily ascertainable. 462 U.S. at 795, 800. While Mennonite may support the argument that all owners of record are entitled to notice by mail, the particular facts and circumstances of each case will in all likelihood be considered, including the steps required of the State in order to identify the new owner prior to the sale. While it appears that the State must use "reasonably diligent efforts" to discover the names and addresses of interested parties, 462 U.S. at 187 n. 4, the court in Mennonite also noted that a governmental body is not required to undertake "extraordinary efforts" in this regard. Id.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.