Brown et al v. Watson.

| | |
|---|---|
| 41b | 309 |
| 65 | 377 |
| 41 | 309 |
| Case 2 | |
| 74 | 91 |

## BROWN ET AL V. WATSON.

1. HOMESTEAD: *Temporary removal from: Abandonment.*

  Temporary removal from a homestead at the call of business or health,
  or any of the numberless exigencies which often require the absence

of whole families from the roof-tree, however long, will not displace the homestead right where there is no actual intention to abandon it.

2. SAME: *Mortgage of, under constitution of 1868.*

Under the constitution of 1868 a mortgage, or other incumbrance of the homestead, except for the excepted debts in that constitution, was void, and the owner might abandon the homestead the next day and sell it and make good title to it. It is not a question of good faith or sound morals, but of state policy.

3. SAME: *Same, for advances after constitution 1874.*

A mortgage of the homestead in the life of the constitution of 1868 for future advances, is void for the advances made after the adoption of the constitution of 1874 as well as for those made before then.

APPEAL from *Ouachita* Circuit Court in Chancery.
Hon. C. E. MITCHEL Circuit Judge.

*H. G. Bunn* for appellants.

The wife has no present rights and was improperly joined. *37 Ark., 298.*

1. The *2nd sec. art. 12, Const. 1868,* as interpreted, is in conflict with bill of rights, and inconsistent with the genius of our government. It assumes to prevent the alienation and disposal of private property, an assumption of power by the government that cannot be conceded. *Const. 1868, sec. 24, art. 1; 11 Ark., 481; Cooley Const. Lien, (4th ed.) p. p., 44–5–6–7 and notes.*

2. This section has been repealed by the present constitution, which takes off the restriction. *2 Pet., 380 ; 30 Ark., 135; 27 Ark., 26.*

3. It was not the intention to prohibit the *voluntary* incumbrance of the homestead by the owner, but only judgments, decrees and other processes of courts.

4. The mortgage was only voidable. See *28 Ark., 485; 32 Ib., 327; 37 Ib., 551; Const. 1874, sec. 9, art. 11.*

5. The evidence shows an abandonment of the homestead. *23 Kansas, 551.*

*Barker & Johnson* for appellees.

1. The mortgage was void. *25 Ark., 101; 31 Ib., 15; 32 Ib., 327; 35 Ib., 45; 37 Ib., 298, 551; 39 Ib., 301.*

2. The constitution of 1874 could not retrospectively effect homestead rights acquired under the constitution of 1868. They were vested rignts and beyond the limits of legislative power. *2 Paige, 238; 2 Hill, 238; Sedgwick Stat. and Const., 177; 1 Heisk., 280; 5 Ib., 353; 54 N. H., 167.*

3. Homestead laws are liberally and humanely construed. *Freeman Cot. & Part., sec. 54; 35 Ark., 50.*

4. The question of abandonment is one of fact. *Thompson on Homst. and Ex., secs. 265-6; 29 Ark., 280.* A temporary absence, with the intention of returning, will not forfeit a homestead right. *37 Ark., 283; Thompson on H. and Ex., secs. 264 to 275.*

5. The fact that part of the goods were sold after the constitution of 1874 cannot affect the right. *Sentelle v. Armor, 35 Ark., 49.*

6. One cannot acquire a homestead on a lease hold estate, he must own the soil. *Const. 1868, art. 12, sec. 3; Gantt's Dig., sec. 2625.*

STATEMENT.

EAKIN, J. Watson, a resident of the state, and the head of a family, owned a house and lot in Camden, worth less than five thousand dollars, upon which he resided. On the twenty-third day of May, 1874, he was indebted to Brown & Bro. for supplies, etc., in a sum of about $225, and desired further advances in order to carry on some farming operations in partnership with one Sam'l Shields. To secure it all they made a note of that date for eight hundred dollars, due the first of November following, and gave a

deed of trust upon some farming stock, the growing crops, and the house and lot of Watson.

By agreement of all parties Shields was released as to his property, and the deed of trust remained in effect, on that of Watson alone.

Upon the faith of it, Brown & Bro. made further advances to Watson during the years 1874 and 1875, and allowed credits of payments, the last being in July, 1879, when a credit of seventy-five dollars was entered, as proceeds of the sale of the house and lot under the trust deed. A large portion of the advances had been made after the adoption of the constitution of 1874, in October. The deed of trust was closed in 1879 when Brown & Bro. bought in the property and gave credit as above stated.

Watson and wife filed this bill in 1881, to annul the sale and conveyance of the house and lot from the trustee, on the ground that the deed of trust of the homestead was void under the constitution of 1868. The defendants in their answer and argument, contend that it was only voidable; that it was by no act ever avoided; and that, long before the sale under the trust deed, Watson had abandoned the premises as a homestead and removed his family. They also show the amount of Watson's indebtedness by a statement of his account.

Upon hearing, the chancellor without objection rendered a personal decree for defendants for the debt, but declared the mortgage of the homestead void, and that it had never been abandoned. The trustee's deed was cancelled. From this the defendants appeal.

## OPINION.

1. HOME-
STED: Aban
donment. Tempor-
ary re-
moval
from.

We approve the finding of the chancellor upon the facts. The property was rightfully a homestead, and had never been abandoned as such, although there had been tempo-

rary removals for business purposes. The complainant was a journeyman carpenter, and compelled to seek work away from home. The wife had sometimes gone with him to other places, working herself to aid in the family support. A part of the while, in the absence of the husband and wife, the house was occupied by Watson's mother and his children. Sometimes it was occupied by some one put in by Watson's agent, and sometimes it was unoccupied, much neglected and going to dilapidation. Still the preponderance of the testimony is in favor of the view that Watson was absent from necessity, and regarded it as his only home, to be resorted to when all else failed. A homestead would be of little worth to the poor, if it might not be temporarily disused, at the calls of business, or health, or the numberless exigencies which often require the limited absence of whole families from the roof-tree. It may be closed or left in the charge of friends, or even left exposed, if there be be no abandonmrnt of an intention to retain it as a homestead. Length of time is unimportant, save as indication of intention.

The question of abandonment cannot become important in cases arising under the constitution of 1868, if the place were the actual homestead when the incumbrance was attempted; that is, independently of questions of limitations and estoppel. We might conceive cases, where an owner of a homestead having encumbered and abandoned it, might by standing by, and misleading another to its purchase, be estopped from claiming it. Or a title so acquired by any color, might ripen to validity. And the ordinary rules as to staleness would be as applicable to such claims as to any others. What this court has so often asserted as to make any further assertion unnecessary of it in the reports, is: that a mortgage or a deed of trust, or any attempted incumbrance on a homestead, other than those excepted in the constitution, is void. The owner may aban-

2. SAME: Mortgage of under Constitution of 1878.

34—R

·don and sell the homestead the next day, and make good title. It is not a question of good faith, or of sound morals. It is a matter of State policy. Whilst the owner might *sell* his homestead, and thus realize its fair value, the constitution meant to protect him and his family from the insidious temptation to incur debts upon it, in the sanguine ·expectation of being able to discharge them ; but which would in many cases result in having the home taken for an insignificant sum. It was easy for a creditor to take notice ·of the homestead, and he cannot complain if he finds that to be void in his hands, which the constitution advised him would be so.

No schedule was necessary. If in answer to a bill for foreclosure, the homestead had not been claimed by defence, the opportunity would have passed, because the decree would become, between the parties, an adjudication of the right. Not so with regard to a deed of trust executed *in pais*. The maker may assert his right by original bill, or the constitutional provision would be easily evaded.

3. Advances after Constitution of 1874. It is a matter of no consequence that much of the merchandise was advanced after the adoption of the constitution of 1874. The contract and attempted incumbrance were all under that of 1868, which continued to govern contracts made under it.

The wife was neither a necessary nor proper party, but the decree is not on this account any more prejudicial to appellant. It is not in her favor.

We find no error in the record. Affirm.