## MELTON *v.* MELTON.

Opinion delivered January 1, 1917.

1. HOMESTEAD—ABANDONMENT.—In order to constitute an abandonment, the party having the homestead right must have removed from the home with the intention at the time never to return thereto; or if he had no such intention at the time, he must have formed the intent afterward never again to occupy the abandoned premises as a home.

2. HOMESTEAD—ABANDONMENT.—The abandonment of a homestead is almost, if not entirely, a question of intent, and the burden of proof is on the party asserting that the homestead has been abandoned; the facts that the claimant had not lived on the premises for about seven years, and that he rented the same, are not inconsistent with a claim of homestead.

3. GIFTS—DELIVERY.—Delivery is essential to complete a gift *inter vivos* or one *causa mortis*.

4. GIFTS—PAROL GIFT OF LAND.—In order to establish a parol gift of land, there must be some testimony tending to show that the real estate was delivered to the donee, and that the donee took possession of the real estate under and by virtue of the gift.

Appeal from Columbia Chancery Court; *R. L. Searcy,* Special Chancellor; affirmed.

### STATEMENT BY THE COURT.

This suit was instituted by the appellant against the appellee at law to recover possession of Lots 25 and 26 in the town of Magnolia. The appellant set up title by virtue of an inheritance from her father, James R. Melton, deceased. The appellee in her answer denied the allegations of the complaint, and set up that she was the widow of Seeb Melton, and that her husband was the son of James R. Melton, and that James R. Melton during his lifetime conveyed the property to Seeb Melton. That her husband gave the property to her. She also set up that she and her husband had occupied the property as a homestead, and that they were so occupying the same at the time of her husband's death. She asked in the prayer of her answer that if it was determined that she was not the owner that she be decreed a homestead in the prop-

erty. She asked that the cause be transferred to equity, which was done.

After the cause was transferred to equity the appellant filed an amended and substituted complaint, alleging title to the property the same as in her original complaint, and asked that her title to same be quieted and confirmed as against the appellee, and also asked that the dower interest of the appellee in the property be allotted, and after allotment of the dower interest that appellant be decreed possession of that portion of the property remaining after such allotment of dower to appellee. Appellee filed an amendment to her answer and cross-complaint, substantially the same as set up in the original, but in this she did not claim any homestead in the property.

The facts showed that J. R. Melton was the owner of the land in controversy at the time of his death; that appellant, Eliza Melton, was his daughter, and W. S. Melton was his son. It appears from the testimony that on the 14th of January, 1893, James R. Melton purchased the land in controversy from H. C. Smith, receiving a warranty deed. After this purchase from Smith, W. S. Melton, the son of J. R. Melton, and husband of the appellee, went into possession of the property and occupied the same as his homestead until his death. J. R. Melton at the time of his death also owned Lots 23 and 24, which he occupied as his homestead.

The court, among other things, found that no valid gift of Lots 25 and 26 was ever made by James R. Melton to W. S. Melton, or by W. S. Melton to the appellee, Lulu Hicks Melton. That under our laws of descent and distribution the legal title to Lots 25 and 26 was in the appellant. That W. S. Melton died without any children or lineal descendants, and that the lots in controversy were an ancestral estate, and that the appellee therefore was entitled to be endowed with a one-half interest in the lots in controversy for her life; that she was also entitled to the lots in con-

troversy as a homestead; that she had not abandoned the same as a homestead.

The effect of the court's finding was that W. S. Melton died the owner of the property in controversy, and occupying the same as his homestead; that he had no children or lineal descendants, and that the title to the property was in appellant, his sister; but that the appellee, the widow of W. S. Melton, was entitled to dower in the lots in controversy, and also entitled to a homestead right in the lots, and that she had not abandoned such homestead. The court entered a decree establishing the legal title to the lots in controversy in the appellant, but denying her prayer for the possession of the property and to have dower allotted in same to the appellee. Other facts stated in opinion.

*C. W. McKay*, for appellant.

1. The court erred in finding that appellee was entitled to a homestead and in declining to allot dower. The preponderance of the evidence shows an abandonment of the homestead. 101 Ark. 101; 37 L. R. A. (N. S.) 807; 22 Ark. 400; 37 *Id.* 283; 41 *Id.* 309; 48 *Id.* 539; 55 *Id.* 55; 73 *Id.* 174; 83 S. W. 913; 17 *Id.* 365; 76 Am. Dec. 432. The intent of the owner will be governed by all the circumstances. 74 Ark. 88; 76 *Id.* 575; 68 *Id.* 76. No present and abiding intention to return to it is shown. 55 Ark. 58; 21 Cyc. 621. See also 107 Ark. 284.

*Stevens & Stevens* and *Kilgore & Joyner*, for appellee.

1. The burden was on appellant to show an abandonment—the lots having been once impressed with the homestead right. 6 Enc. Ev., p. 534; 10 N. W. 804. The evidence must show removal with the intention of not returning. 62 N. W. 470; 11 S. W. 502; 76 *Id.* 751; 37 Ark. 283; 22 *Id.* 404.

2. This was not an ancestral estate. In ejectment plaintiff must prove title. 80 Ark. 31, etc. The

rule is the same in suits to quiet title. 82 Ark. 294; 99 *Id.* 137; 4 Enc. Ev. 576-7; 14 Cyc. 152; 11 S. W. 10; 13 Current Law 10; 13 *Id.* 1307.

3. There is no evidence that appellant's brother owned the lots at his death. But if he did he parted with the title by gift to his wife. The title passed from J. R. to his son, the husband of appellee. Declarations of a donor subsequent to parting with title are admissible. 6 Enc. Ev. 212. So are acts of ownership. *Ib.* 214; 6 L. R. A. (N. S.) 508. See 108 Ark. 277, a case like this. Also 88 S. W. 977; 81 Ark. 328. The decree should be reversed on the cross appeal. 32 Ark. 116; 82 *Id.* 45.

Wood, J. (after stating the facts). The appellant contends that the court erred in finding that the appellee was entitled to a homestead in the lots in controversy and in refusing to have the dower of appellee in the property allotted and set aside. W. S. Melton and appellee, his wife, had occupied the property in controversy as their home several years before the death of W. S. Melton. About eight months before the death of W. S. Melton, he and appellee went to appellee's father's, where they remained until W. S. Melton died. During this time they returned occasionally to their home, the last time being about four months before W. S. Melton died. After the death of W. S. Melton, the appellee moved all of her furniture out of the house and rented the property; she had not lived on the property since the death of her husband; she at one time stated in joke, since the death of her husband, that she would take $3,500.00 for the property; she had not resided on the place for a period of about seven years. On one occasion, after her husband's death, appellee told the appellant that she did not know that she would ever live on the property in controversy again.

(1–2) The above is substantially the testimony upon which the court found that there had been no abandonment of the homestead upon the part of the appellee after the death of her husband, and this

finding is not clearly against the preponderance of the evidence. It is a well established rule of law that in order to constitute an abandonment the party having the homestead right must have removed from the home with the intention at the time never to return thereto; or, if he had no such intention at the time, he must have formed the intent afterwards never again to occupy the abandoned premises as a home. In *Stewart v. Pritchard*, 101 Ark. 101, 37 L. R. A. (N. S.) 807, we said: "The abandonment of a homestead is almost, if not entirely, a question of intent. This intent must be determined from the facts and circumstances attending each case." The burden was on the appellant to show that appellee had abandoned her homestead, and the evidence is not sufficient to establish that fact by a clear preponderance. There is no testimony in the record to show that the appellee, after the death of her husband, had acquired in her own right another homestead. The fact that she had not lived on the land in controversy for about seven years, and that she had rented same, was not inconsistent with a claim of homestead. While these facts tend to show a change of residence, they are not sufficient of themselves to establish an abandonment of the homestead. At least, it is not sufficient to warrant this court in reversing the finding of the trial court that there had been no abandonment. See *Robinson v. Swearingen*, 55 Ark. 55-58.

It will be observed that appellee did not tell appellant that she never intended again to live on the property in controversy. She stated that she did not know that she would, but that is quite a different thing from a positive statement that she would not, and to constitute an abandonment it must appear that there was a positive, affirmative intention, as we have shown, never to occupy again as a home the premises once impressed with a homestead character. There is nothing in the testimony to show that appellee was applying the property in controversy to other uses inconsistent with the homestead purposes. A rental of the property is not inconsistent with an intention to

return and occupy the premises as a homestead. In the absence of some affirmative testimony to the effect that appellee had expressed an intention never to return and occupy the premises as a homestead, and in the absence of any testimony showing a use of the property by appellee inconsistent with the claim of homestead, it cannot be said that the finding of the chancellor that there was no abandonment is against the preponderance of the evidence.

The decree, therefore, on appellant's appeal must be affirmed.

The appellee, on her cross-appeal, contends that the court erred in finding that there was no valid gift by her husband, W. S. Melton, to the appellee. Appellee, at one place in her testimony, when asked how she obtained title to the property, answered, "Through my husband; his mother and sister deeded him the property and he was to leave it to me." At another place in her testimony she stated that she made improvements on the place, believing that it was her's and her husband's. Further along in her testimony she stated that before her husband's death he told her that whatever interest he had in the place he gave it to her. That was "during his last illness." He stated this because witness had improved the property and taken care of her husband, who was afflicted with tuberculosis. For that reason "he expressed on his death-bed that the title—whatever interest was in him—he wanted me (his wife) to have the place." In answer to leading questions she stated that she never would have made the repairs and improvements that she did make if her husband had not turned the property over to her. She stated that her husband gave her the place about eight or nine years before he died. He did that when she began to put a good many improvements on the place.

There was testimony by several witnesses to the effect that W. S. Melton had said before his death that he had given the lots to his wife for the money she had put on them; that it had cost her a great deal

and he wanted her to have it. One witness testified that just before his death W. S. Melton wanted to come to town to fix the deed to his wife to the lots, claiming that he had given her the property for advances made in improvements and his support.

(3) Now. if appellee acquired a fee simple title to the property in her own right it was by virtue of a gift of the same from her husband. But the above testimony is not sufficient to establish a gift of the land in controversy, either as a *donatio inter vivos* or *donatio causa mortis.* At least the finding of the court to the effect that there was no gift is not clearly against the preponderance of the evidence, for whether the alleged gift be considered one *inter vivos* or *causa mortis* delivery was essential to the completion of the gift. *Hatcher* v. *Buford,* 60 Ark. 169; *Marshall Bank* v. *Turney,* 105 Ark. 116, 118.

There is no testimony in this record to warrant the finding that the appellee took possession of the property and made improvements thereon under and by virtue of the alleged gift. She and her husband lived on the property as their homestead and continued to live thereon until his death. There was no visible change in the character of the possession from the time she first went on it as the wife of W. S. Melton, the owner of the property, and the time when she claims that she made the improvements thereon as her property, and under such circumstances it cannot be determined that her possession and the expenditures that she made upon the place were traceable to a gift of the property to her by her husband.

(4) The testimony shows that she entered into the possession of the property originally as the wife of W. S. Melton and occupied the same with him as their homestead, and there is nothing in the record to show that the character of such possession was ever changed or that she, at any time prior to his death, claimed that she was in possession in any way other than by virtue of the fact that she was the wife of W. S. Melton. There was no deed from Melton to his wife, and in

order to establish a parol gift of real estate there must be some testimony tending to show that the real estate was delivered to the donee and that the donee took possession of the real estate under and by virtue of the gift.

In *Young* v. *Crawford*, 82 Ark. 38, 45, quoting from Prof. Pomeroy, we said: "A parol gift of land will not be enforced unless followed by possession and by valuable improvements made by the donee. * * * When the donee takes possession and makes outlays upon valuable and substantial improvements in execution of the donation *, * * a parol gift of land will be specifically enforced."

The above case and other cases cited by counsel for appellee, to-wit: *Naler* v. *Ballew*, 81 Ark. 328, and *Guynn et al.* v. *McCauley et al.*, 32 Ark. 116, are not in appellee's favor, for the facts of those cases clearly show that there was a delivery of the property and possession taken under and by virtue of the gift. Not so here. The court was correct in finding the lands in controversy were ancestral.

The judgment of the chancery court is in all things correct, and it is therefore affirmed.