BRUNSON v. REINBERGER & COLLIER.

Opinion delivered April 29, 1918.

1. APPEAL AND ERROR—CONFLICTING TESTIMONY—CHANCERY APPEAL.
—In a chancery appeal, where the testimony is conflicting, and where there is no preponderance either way, the decree of the chancellor will be affirmed unless there has been an erroneous application of the law.

2. Trade-marks and names—medicine.—In an action by a physician to enjoin the manufacture of a compound upon the ground that the prescription belonged to him, *held,* under the evidence that the plaintiff had failed to establish any right to the exclusive ownership of the prescription by registered name, trade name, or otherwise.

3. Injunctions—ingredients of medicines.—A physician can not enjoin the manufacture of a medicine composed of a combination of drugs in every-day use, because the same was the same formula as used by the physician.

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*Danaher & Danaher* and *J. M. Shaw,* for appellant.
The preponderance of the evidence sustains the plaintiff's contention and it was error to refuse the relief prayed. 22 Cyc. 842; 114 Mich. 149, 156; 96 U. S. 255; 43 L. R. A. 95; 33 Conn. 157.

*Irving Reinberger* and *Taylor, Jones & Taylor,* for appellees.
1. The findings of the chancellor are not contrary to the preponderance of the evidence.
2. There can be no exclusive right to the use of formulas for the manufacture of common everyday remedies. 21 Am. St. Rep. 442; 151 Mass. 190.

STATEMENT OF FACTS.

Appellant instituted this suit against the appellees. He alleged that he was a practicing physician and had originated a prescription known as ''Dr. Brunson's Famous Prescription;'' that he had the appellees, who were druggists, to prepare the medicine according to the prescription and sold the same under an agreement that they should divide equally the profits arising therefrom; that they had manufactured and sold several thousand bottles of medicine and denied that they had any contract with appellant, and refused to account to him for any profits derived from such sales, but were nevertheless continuing to advertise and sell the medicine prepared according to his prescription. He asked for a permanent

injunction prohibiting the appellees from preparing and selling the medicine under any name.

The appellees answered, admitting that they were selling a medicine prepared under a prescription known as Dr. Brunson's Famous Prescription; but they denied that appellant originated the prescription; and denied that there was any contract between them for a division of the profits from its sale. They alleged that the name was suggested to them by appellant because there once lived in Pine Bluff a famous doctor by the name of Brunson, who died many years before, and they adopted the name because he had had a large clientele. They alleged that they had put the medicine upon the market with a special label upon the bottle which constituted their trade mark; that appellant had been imitating their trade mark and selling medicine under a similar trade mark. They made their answer a cross-complaint and asked that appellant be enjoined from using their label.

Appellant answered denying the allegations of the cross-complaint.

A witness on behalf of the appellant testified in substance, that he was working for the appellees when they began manufacturing the medicine known as "Dr. Brunson's Famous Prescription;" he had seen appellees and their clerk often sell bottles of such prescription and heard them recommend the same as Dr. Asa Brunson's, whose office at the time was over their drug store; such recommendation was one of their main selling arguments. Witness while working for the appellee also followed their lead and sold the medicine as Dr. Asa Brunson's prescription.

Another witness testified that he had bought the Dr. Asa Brunson's Famous Prescription from the clerk of appellees upon the recommendation, as witness understood, that it was Dr. Asa Brunson's.

Another witness testified, that appellees requested witness to take a dose of their Dr. Brunson's Famous Prescription, telling witness that it was Dr. Asa Brun-

son's who was witness' family physician; that they did not mention the name of the old Dr. Rand Brunson.

Two pharmacists testified that the ingredients of the prescription were the same that they had often filled for Dr. Asa Brunson.

The appellant testified that he had been a practicing physician for 17 years and during the year 1916 had an office over appellees' drug store. Appellees were working on a prescription to sell as a diuretic. He asked them why they did not use his prescription which he considered far better. They agreed that they would use his prescription and he gave them his written prescription and they agreed to call it "Dr. Brunson's Famous Prescription." He suggested that they would go in together and organize a company and share in the profits, and they agreed. They sold the medicine from that time on. Appellees had some cards printed which they gave to the people as follows: "This card certifies that the bearer has purchased one bottle of Dr. Brunson's Famous Prescription and is entitled to one free consultation with Dr. Brunson." The corporation was never formed, though they often talked about it. The appellees had sold the medicine under witness' prescription from October, 1916, until about the first of January, 1917, when witness asked them for a division of the profits. They refused. Witness had used the prescription ever since he had been a practicing physician. He originated it, and he never knew any other physician to have one like it. The testimony of the appellees tended to prove that they originated the prescription known as Dr. Brunson's Famous Prescription; they talked it over among themselves, discussing with their clerks and pharmacists the ingredients that should compose it. They wished to put upon the market a remedy for stomach, liver, and kidney troubles, a general tonic. They could have called it by any name they wished, but as old Dr. Rand Brunson had previously had medicines on the market, and had a good reputation as a physician, they had him in mind and not the appellant when they decided upon "Dr. Brunson's Famous Prescription"

as the name for their remedy. The appellant had nothing to do with its preparation; did not know what was in it; did not know that appellees intended putting such a preparation on the market unless he got the idea from seeing them working on the prescription in the store. They instructed their agents in recommending and selling the remedy to "use the words old Dr. Brunson's." After they had been advertising and selling it for some time the appellant came into appellees' store and discussed with them about forming a stock company. They had several meetings and discussions with appellant and others whom appellant had invited to become interested in the organization. They claimed that the prescription which appellees were using was the appellant's and that appellees should give appellant controlling interest in the company. Prior to that time he had never made any claim to owning an interest. Appellees explain the card they used, referred to in appellant's testimony, by saying that in a joking way they were discussing with appellant a method of advertising their medicine and he suggested that the card would be a good way for advertising and would also be a good way to enable him to get hold of some extra money. He stated that if he got the advertising and got the people in his office that he would get the money. The testimony of the appellees as to the origin of the prescription was corroborated by their clerk and prescriptionist who were working for them at the time the medicine was originated and while they were manufacturing and selling the same.

One witness testified that he had been a druggist in Pine Bluff about twenty or twenty-three years before; at that time had a book in which he kept physician's prescriptions. He put up prescriptions for sale in the name of Dr. Brunson; after his death, witness got permission from his widow to use his name. Among the prescriptions was one marked Brunson's Stomach Prescription. Witness had a copy of it in his book in witness' handwriting. Witness gave appellees permission to use this prescription. The prescription contained some of the

same ingredients that Dr. Asa Brunson used. Witness received a letter from appellees stating that they were having trouble with appellant about using the name and witness wrote appellees giving them all privileges that witness had.

There was testimony on behalf of the appellees tending to show that a druggist in Pine Bluff was manufacturing for the appellant a medicine called Dr. Brunson's Famous Prescription in accordance with the formula by the appellant. The druggist testified that he made a contract with Dr. Brunson to manufacture the medicine according to the formula and to sell the same under the name Dr. Brunson's Famous Prescription with the understanding that they were to divide the profits. Witness knew when he entered into the contract with appellant that appellees were making a medicine called Dr. Brunson's Famous Prescription, and witness knew that the formula which appellant gave him was the same appellees were using.

There was some other testimony tending to prove their respective contentions but it would serve no useful purpose to further set it forth.

The court found that neither the appellant nor the appellees were entitled to the relief prayed by them, and entered a decree dismissing appellant's complaint and appellees' cross-complaint for want of equity.

WOOD, J., (after stating the facts). (1) It will be observed from the statements that the parties adduced testimony to sustain their respective contentions, and there is a sharp conflict between the testimony of the witnesses for the appellant and the witnesses for the appellees.

This puts upon this court the necessity, as counsel for the appellant correctly remarked, "to determine which crowd is telling the truth." The state of the record is such as to leave us in doubt as to which of the parties has the preponderance of the evidence.

The rule in such cases is to make the finding of the chancery court on the issues of fact our finding, and to

affirm its decree based upon such finding unless there is an erroneous application of the law. *Leach* v. *Smith,* 130 Ark. 465; *Melton* v. *Melton,* 126 Ark. 541; *Long* v. *Hoffman,* 103 Ark. 576.

We do not find that there was an erroneous application of legal principles to the facts of this record. The appellant does not prove by preponderance of the evidence, as the trial court correctly found, that he had adopted a trade mark or trade name for Dr. Brunson's Famous Prescription and that he had established and built up a trade under such name which would entitle him to injunctive relief against appellees who were manufacturing and selling the medicine under the same name.

(2-3) The chancellor was correct in finding that appellant had failed to show by preponderance of the evidence that he had originated the prescription under which the medicine was made that was being manufactured and sold by appellees.

A preponderance of the evidence does not show that the appellees in selling Dr. Brunson's Famous Prescription were violating any trade secrets reposed in them by the appellant. We are unable to say from the testimony that appellees did not originate the formula or prescription by which the medicine they were selling was manufactured. *O. & W. Thum Co.* v. *Tloczynski,* 114 Mich. 149. But, even if the testimony had shown that Dr. Brunson's Famous Prescription was originated by the appellant, still under the facts of this record it could not be said that he had proprietary interest in the same which would entitle him to the relief sought. The ingredients of which the medicine was composed were of such common every-day use that appellant could not be held to have the exclusive right to prohibit others from using the same combination as used by him. *Chadwick* v. *Covell,* 151 Mass. 190.

The decree is, therefore, correct in all things and is affirmed.