LILLY *v.* LILLY.

Opinion delivered November 12, 1928.

*Trimble & Trimble,* for appellant.

*Chas. A. Walls,* for appellee.

MEHAFFY, J.   On the 29th day of May, 1924, W. H. Lilly, a resident of Lonoke County, died intestate, leaving surviving him his widow, Beulah Lilly, and four minor children.   He owned a piece of property in Carlisle, Arkansas, but at the time of his death he was living on a rice farm in Lonoke County, Arkansas, upon which he had a lease.   He also left one life insurance policy in the State Life Insurance Company for $1,000, one in the Pacific Mutual Insurance Company for $2,000, and one in the Modern Woodmen for $2,000.

Within a day or two after the death of W. H. Lilly his brother, K. L. Lilly, was appointed administrator, and gave bond, and letters were issued to him.   The administrator filed an inventory and a report of the assets.

W. H. Lilly and Beulah Lilly had been married only about two months when he died, and, after letters of administration had been issued to K. L. Lilly, brother of the deceased, the bank, which had agreed to furnish Mr. W. H. Lilly to enable him to make his crop, declined to continue to furnish unless some person other than the widow and children would manage the rice farm. A contract was drawn by the bank, and another brother of the deceased agreed to take charge of the rice farm, and did do so. This contract was signed by Mrs. Beulah Lilly. She states that she did not know anything about the effect of the contract; did not know what interest she had in the estate of her deceased husband, and did not know that she had dower, or any other interest. We think, however, it appears from all the evidence that there was no intention on the part of the brothers of W. H. Lilly to take advantage of Beulah Lilly, and no intention on her part to get anything except what she was entitled to.

The property in Carlisle had at one time been the home of W. H. Lilly, but he had left that property, moved away from it in 1919, and, as has already been stated, married Beulah Lilly about two months before he died, the 29th of May, 1924. It is earnestly insisted by the appellant that this property at Carlisle was his homestead, and that the appellant is entitled to this property as a homestead. The law with reference to a homestead of a widow is well settled in this State, and there is no dispute about the principles of law in this case.

The appellant insists that there is no evidence of abandonment by Lilly during his lifetime, and that it was still his homestead at the time of his death. While there is no direct testimony that he abandoned it or said he had abandoned it, yet abandonment may be proved by conduct, circumstances and actions, as well as by direct testimony. Whether it was his homestead at the time of his death and whether he had abandoned it, were questions of fact, and the chancellor found against the

appellant, and we cannot say that the finding of the chancellor as to the homestead was against the weight of evidence.

There was an indebtedness against the homestead of approximately $900. This indebtedness was paid out of money belonging to the estate which was collected from the insurance companies. The chancellor found that the indebtedness should be deducted from the value of the property, and the widow was entitled to a dower interest, or one-third of the difference between the value and the indebtedness. It is the contention of the appellant that, since the indebtedness was paid with the estate's money, one-third of that was hers, and that she is entitled to a dower of one-third of the property and not one-third of the equity or one-third of the value after paying the indebtedness.

This would be true if the estate's money had been used to pay the indebtedness and had not been accounted for by the administrator, because, if the estate's money was used, one-third of that belonged to her, and when she contributed her portion to paying the indebtedness she would, of course, be entitled to dower in the property freed from the indebtedness. But the evidence shows that, while originally the insurance money was taken to pay this indebtedness, yet all of the insurance money was accounted for in the settlement, and she gets her one-third of the insurance money, and she would not be entitled to take one-third of her insurance money and then take one-third of the property when the indebtedness had been paid out of that portion of the insurance money that did not belong to her. These also are questions of fact, and were determined by the chancellor, and, we think, correctly determined.

When the insurance money was received by the administrator, he made a deposit in one bank of $700 and in another bank of $600, and received interest on that, one-third of which interest the chancellor found belonged to the widow. It is the contention, however, of the appellant that she was entitled to one-third of the $700

and one-third of the $600 items. This is true, but one of the insurance policies was for $1,819.28 and the other one was for $878.41, the insured having borrowed a small amount on each policy. The appellant is entitled to one-third of each of these items, but she is not entitled to take one-third of each of these and then take one-third of the $1,300, when the $1,300 was itself a part of this insurance money—that is, a part of the $1,819.28 and a part of the $878.41. She could not have dower interest in these items and also in the $1,300, which was a part of these items.

The other insurance policy was for $2,000, and, according to the testimony, belonged entirely to the appellant as the widow of W. H. Lilly. It was a policy, however, taken out in the Woodmen during the lifetime of Lilly's first wife, and the appellant, although told that she was entitled to all of it, said that it was money coming from a policy issued in the lifetime of the first wife, and that she would take $400 of it and give the children $1,600, and Mr. Lilly, the guardian of the children, has that $1,600 as guardian of the minor children. There is no controversy about this. The appellant agreed to it, but it accounts for $400 that she had which she says she used in helping to pay expenses.

There is some controversy about the manner in which the $300 to which the widow was entitled was set aside to her, but it appears from the evidence that she signed a petition asking that it be set aside, and that it was. It appears, however, that a portion of it was never turned over to her, the parties in possession claiming that she has never called for it, and she can, of course, get that at any time she calls for it. It is the property she is entitled to under the statute, and that property belongs to her, and she may possess herself of it at any time.

There was some of the personal property sold, and it appears that the proceeding with reference to the sale was irregular, and some of the payments made by the administrator were not authorized by the court, but, as

to the sale of the personal property, it clearly appears that it brought all that it was worth, and it was approved by the court and the amount for which it was sold accounted for by the administrator.

We think the undisputed proof shows that, after paying the debts and expenses of the rice crop, there was a balance of $1,168.53. The widow was entitled to one-third of this, which was $389.51. Adding to this the amount found by the chancellor makes a total to which the appellant is entitled of $965.28.

We do not think that any fraud or that any intentional wrong can be charged to either party. The testimony shows that the appellant lived on the rice farm, worked and helped make the crop; that she cared for the minor children of the deceased; that one of the brothers, in December, moved the appellant and minor children of the deceased to the Carlisle property, and that she cared for them, and there was no complaint about her treatment of the children. She was willing to continue to keep them, but one of the brothers took them to other homes. During the time she kept the children the chancellor did not charge her with any rents, but from that time on he charged her with rent, and, without deciding whether that was properly chargeable to her, the evidence conclusively shows that she collected approximately as much by renting rooms as this item amounted to.

As we have already said, there are no principles of law involved, but the questions determined by the chancellor were purely questions of fact, there being no dispute about the principles of law to be applied, and the chancellor's finding, unless against the preponderance of the evidence, will be sustained. He did not find in favor of the widow for one-third of the money on hand from the rice crop, after paying the expenses and indebtedness, and the testimony is undisputed that it was the intention of the parties that she and the children should have whatever profit there might be in the rice crop.

The decree of the chancery court, because of the chancellor's failure to allow her a dower in the profits from the rice crop, will be reversed, and remanded with directions to enter a decree in appellant's favor for $965.28, with a lien on the property as provided in the original decree.