IZARD COUNTY BOARD OF EDUCATION et al *v.*
VIOLET HILL SCHOOL DISTRICT NO. 1 et al

CA 83-122                                         663 S.W.2d 207

Court of Appeals of Arkansas
Division I
Opinion delivered January 25, 1984

*Osmon & Wilber,* by: *Norman C. Wilber,* for appellant.

*Seay & Bristow, P.A.,* by: *Bill W. Bristow,* for appellee.

TOM GLAZE, Judge. This case involves a boundary line dispute between the Oxford and Violet Hill school districts. The trial court decided the dispute in Violet Hill's favor. Oxford contends on appeal that the court's decision is against the preponderance of the evidence and that the court erred by applying the wrong law. We affirm.

In its brief, Oxford characterizes this action as the "battle of the maps" — a vivid description depicting a boundary dispute caused in large part because of variances in four different maps, each supposedly reflecting the correct line dividing the two school districts. Violet Hill relied on two maps, dated 1936 and 1971, located in the State Department of Education. To establish the boundary line, Oxford used maps located in the County Supervisor's and the County Assessor's offices. In holding for Violet Hill, the trial judge established the line between the districts in accordance with the boundaries reflected in the 1936 and 1971 maps. In reviewing the findings of a circuit judge

sitting as a jury, we do not reverse unless we find them clearly erroneous or clearly against a preponderance of the evidence. *National Investors Fire and Casualty Insurance Co. v. Chandler*, 4 Ark. App. 116, 628 S.W.2d 593 (1982).

This controversy was precipitated in part by a dispute between the parties over which district certain students should attend. One student is a basketball player, and Oxford contended he should attend school in its district because he and his family reside there. Violet Hill countered that his family's home was within its district.[1] Subsequently, Violet Hill commenced this cause to establish the location of the districts' boundary line to determine in which district these students, including the basketball player, lived. The basketball player's home is situated in Section 8, Township 18 North, Range 8 West; however, the disputed boundary line involves not only Section 8 but also eight other sections, *viz.*, 4, 9, 16, 17, 20, 21, 29 and 32. Each district's tax revenues from the State and local property assessments also are affected by the outcome of this lawsuit.

Violet Hill's suit challenged two decisions made by the Izard County Board of Education (hereinafter Board): (1) its initial decision adopting the County Supervisor's map which placed all nine sections in the Oxford district, and (2) its subsequent decision drawing the boundary line to correspond with the County Assessor's map and tax records, thus placing Sections 8, 20 and part of 17 in Oxford and the remaining sections in Violet Hill. In reaching these decisions, the Board had attempted to resolve the parties' dispute on the location of their common boundary line; instead, the Board's actions led to this suit. In reviewing the Board's decisions, the trial court found that the Board erred in relying on the County Supervisor's map and the Assessor's records. Alternatively, the court concluded the correct dividing line should reflect that which appeared on the 1936 and 1971 maps filed with the State Board of Education.

---

[1]At some point in time, the student moved to live with his grandparents, who reside in Horseshoe Bend, which is within the Violet Hill school district.

We believe the trial judge's findings are supported by the evidence. The judge found that the two maps relied on by Oxford had been altered — a fact which we quickly affirm by way of our own inspection. Upon examining the County Supervisor's map, we observed a dim red line which has been erased. Before the erasure, this line was drawn reflecting sections 8, 20 and part of 17 in Oxford and sections 4, 9, 16, 21, 29, 32 and part of 17 in Violet Hill. A new red line now exists on the map, placing all nine sections in Oxford. The County Assessor's map relied on by Oxford also reveals an erased red line; this erased line, however, reflected all nine sections in Violet Hill. Like the Supervisor's map, the Assessor's map has a new red line showing all nine sections in Oxford. The trial court found the Board made these alterations sometime in the 1970's. In support of this finding, the record reflects that the County Supervisor, Tom Simpson, testified that he recognized the lines appearing on the 1936 and 1971 maps (introduced by Violet Hill) as being the existing boundary between the parties during the entire time he served in office — from 1937 until 1972. As noted earlier, the 1936 and 1971 maps show all nine sections in Violet Hill, not in Oxford as is now depicted by the County Supervisor's map. Of course, we are aware of Oxford's argument in this appeal that Simpson, due to infirmities of old age, was confused when he testified on this point. On re-direct examination, he attempted to correct his prior testimony, stating he incorrectly relied on the 1936 and 1971 maps and instead the County Supervisor's map reflected the proper boundary line. Of course, the trial court had to weigh Simpson's testimony to decide which part of it, if any, to accept as credible and in such matters, we defer to the superior position of the trial judge. *Id.* at 117, 628 S.W.2d at 594. Obviously, the court accepted Simpson's testimony that the lines on the 1936 and 1971 maps were correct and rejected the maps presented by Oxford because they contained questionable alterations, which had occurred after Simpson left office.

In addition to Simpson's testimony, other reasons support the court's refusal to rely on the Supervisor's and Assessor's maps and its finding that those maps had been altered during the 1970's. For example, the County

Supervisor's map was printed in 1976 and both the erased and new red line obviously were placed on the map in 1976 or thereafter. The same is true concerning the Assessor's map since it, too, was printed in 1976. An Assessor's employee, June Maxwell, conceded that this map was changed to correspond with the Supervisor's map sometime after she began working in the Assessor's office, apparently in 1975 or 1976. Thus, according to Maxwell's testimony, the Assessor's map was changed in the 1970's and before that change, the map reflected the disputed line drawn so as to place all nine sections within the Violet Hill district. In sum, Oxford's witnesses and the two maps it introduced presented conflicting views regarding the true location of the parties' common boundary line; based on this evidence alone, the trial judge reasonably could have inferred that all nine sections had been in the Violet Hill district since 1936 and that the confusion over the correct line arose only when new and different lines appeared on the Supervisor's map which was altered sometime during the 1970's.

The court's findings are further supported by other evidence presented by Violet Hill. Violet Hill called as its witness, Truett Goatcher, an official of the Arkansas State Department of Education. After testifying that the County Supervisor is required to submit any changes in school district boundaries to the State Education Office, Goatcher stated that the Izard County Board had submitted no changes. In fact, he testified that the only Izard County records on file in his office before this controversy arose were two maps reflecting that all of the disputed sections are in the Violet Hill district. These maps were dated 1936 and 1971, and neither has a hint of an alteration in the boundary lines. These maps are also the ones Simpson, the former County Supervisor, identified as reflecting the official boundary he relied on from 1937 until 1972.

Oxford argues that the two maps located in the State Education Office are not official and that the only official map is the one required by law to be kept in the County Supervisor's office. This argument ignores the real issue. All parties agreed that no official changes had been made in the common boundary line between the two districts; thus, the

trial judge was confronted with determining where their original dividing line was drawn. The trial court did not rely on the County Supervisor's map because it had been altered. The judge chose to accept the maps on file with the State Education Department — not because these maps were official — but because, along with certain testimony, they revealed where the dividing line existed in 1936.

For the same reason, we dispose of Oxford's contention that the trial judge erred by misapplying Ark. Stat. Ann. §§ 80-404, -424 and -425 (Repl. 1980). Section 80-404 deals with the formation, dissolution or change in school districts. As Violet Hill points out, the Izard County Board clearly did not intend to change existing boundary lines but only attempted to resolve where the line was located. Therefore § 80-404 has no application to the facts here.

Sections 80-424 and -425 are likewise inapplicable. Section 80-424 merely ratified actions taken by county boards of education before March, 1951, in creating, consolidating or altering school districts. In the instant case, no change has occurred in the line between Oxford and Violet Hill since it was established in 1936; thus, § 80-424 is inapposite. Nor can we agree that § 80-425 helps Oxford's cause. Among other things, § 80-425 compiles a 1931 Act that cures any defects which may have existed in the formation of a *present* (then existing) school district; it also empowered the county boards of education to fix boundaries of such a district where they are uncertain because of lost records or other reasons. According to Mr. Simpson's testimony, the Izard County Board was established in 1937. We also find no evidence that the Oxford and Violet Hill districts even existed in 1931, thus making § 80-425 inapplicable.

We believe the evidence clearly supports the findings of the trial court, and therefore, we affirm its decision in all respects.

Affirmed.

MAYFIELD, C.J., and CRACRAFT, J., agree.