Clarence SMITH d/b/a CONTINENTAL SIGN MANUFACTURERS *v.* FLASH TV SALES AND SERVICE, INC.

CA 85-283 706 S.W.2d 184

Court of Appeals of Arkansas
Division I
Opinion delivered March 26, 1986

*Gean, Gean & Gean*, by: Lawrence W. Fitting, for appellant.

*Hardin, Jesson & Dawson*, by: *David Hardin*, for appellee.

JAMES R. COOPER, Judge. This appeal is from an order of the Sebastian County Circuit Court denying the appellant's motion to modify, set aside and vacate a writ of mandamus to the sheriff, which directed execution upon property claimed by the appellant to be his homestead.

In May, 1983, the appellee obtained a judgment of $13,750.00 against the appellant, which was not satisfied. A writ of execution was issued on December 6, 1983, and served upon the appellant on February 6, 1984. The property, which was to be sold on April 25, 1984, was a residence and lot at 2813 South Houston in Fort Smith. At the time of service of the writ of execution, the appellant and his family were living at a home owned by the appellant at 8112 Cypress Street. However, in April 1984, the appellant and his family moved into the house on South Houston, paid off the mortgage on the Houston property and commenced construction work on it. On April 24, 1984, the appellant filed a petition in bankruptcy, which stayed the sheriff's sale.

188

The bankruptcy proceedings were dismissed on August 13, 1984, and on September 13, 1984, the appellee requested the sheriff to schedule a sale of the property on Houston Street. After the sheriff refused to do so because the appellant and his family were living in the house, the appellee obtained a writ of mandamus directing a sale of the property. Shortly thereafter, the appellant moved to modify, set aside, and vacate the writ of mandamus on the ground that the property on Houston Street was exempt from execution as his homestead. At the conclusion of the hearing, the circuit court noted that the case was "very close" but found that the property was not the appellant's homestead and directed that the property be sold. The only substantial question involved in this appeal is whether the circuit court's finding that the property is not the appellant's homestead is clearly erroneous.

The appellee has preliminarily argued that the order in question is not appealable. This argument, however, is without merit. The order denying the appellant's motion to modify, set aside, and vacate the writ of mandamus ordered that the sale of the property, under levy of execution, proceed. Clearly this order falls within the ambit of Ark. R. App. P. 2. The test of finality and appealability of an order is not whether the order settles the issue as a question of law, but to be final, the order must also put the court's directive into execution, ending the litigation or a separable branch of it. *Scaff* v. *Scaff*, 5 Ark. App. 300, 635 S.W.2d 292 (1982). *Accord Morgan* v. *Morgan*, 8 Ark. App. 346, 652 S.W.2d 57 (1983). As explained in *Omni Farms, Inc.* v. *Arkansas Power & Light Co.*, 271 Ark. 61, 607 S.W.2d 363 (1980), *appeal dismissed*, 451 U.S. 935 (1981), an order is appealable if it would divest a substantial right in such a way as to put it beyond the power of the court to place the party in the party's former condition.

It is undisputed that the appellant purchased the property on Houston Street and established a homestead there in 1966. However, the house was severely damaged by termites, and the appellant began nearly a total reconstruction of the house in 1977 or 1978. At that time, the appellant moved into a house which he owned on Iola Street, and in 1980, the appellant purchased and moved into a house on Cypress Street.

The testimony established that at some point, the electricity

and gas to the house on Houston Street were shut off. According to the appellant, this rendered the house too cold to inhabit during the winter months. The appellant testified that between 1978 and April of 1984, he and his family lived in the house on Houston Street during the warm months. Repairs of service lines were made later. Appellant also claimed that he had never abandoned the residence as a homestead, had always intended to live there again, and that he had never attempted to sell the property. He claimed that numerous items of personal property were left in the house and never removed during their absence. The appellant further claimed that the house on Houston Street had never been levied upon before, and that if it had been, he would have invoked the homestead exemption. The appellant called Hollis Scott, the owner of a pest control company who was contracted by the appellant in April 1984 to inspect the property, as a witness. On cross-examination, Scott testified that, although there was some furniture stored in the rebuilt garage, as well as some dishes in the kitchen, there were no sleeping facilities, and it did not appear that anyone was living in the house.

The appellee introduced much documentary evidence (in the form of summonses and writs of execution) showing that the appellant and his family actually were in residence at the house on Cypress Street during many of the warm months falling in the period in question, contrary to the testimony of the appellant. Additionally, the exhibits reflected that the appellant did not reside at the Houston Street address in June or December of 1978, January of 1982, or March of 1984. The appellant had also listed his residence address in responses to interrogatories as 8112 Cypress Street.

The appellee further introduced evidence that, contrary to the appellant's assertion, the house on Houston Street *had* been previously levied upon and that the appellant had not raised the homestead exemption, but had satisfied the judgment. Additionally, the appellee introduced the business records of the local gas and electric company to show that the service begun in the appellant's home at the Cypress Street address was still continuing; that between September of 1981 and January of 1983, the service at the Houston Street house was listed in the name of another individual (the appellant's son-in-law) and that, after the meter was removed in February of 1984, service was re-estab-

lished to the appellant at the Houston Street address on May 3, 1984.

Since there is no question that the appellant did in fact establish a homestead on Houston Street in 1966, the controlling issue is whether the appellant abandoned that homestead in 1977 or 1978. If he did in fact abandon the homestead, his return thereto after the levy of execution would not create a homestead exempt from execution. *See Tillar* v. *Bass*, 57 Ark. 179, 21 S.W. 34 (1893); *Patrick* v. *Baxter*, 42 Ark. 175 (1883).

Homestead laws are remedial and should be liberally construed to effectuate the beneficent purposes for which they were intended. *City National Bank* v. *Johnson*, 192 Ark. 945, 96 S.W.2d 482 (1936). However, "one must actually and in good faith occupy land as a residence, before the levy of an execution, to impress it with the homestead character and to make it exempt from the levy of the execution." *Bank of Quitman* v. *Mahar*, 193 Ark. 1111, 1113, 104 S.W.2d 800, 801 (1937). In *King* v. *Sweatt*, 115 F. Supp. 215, 218 (W.D. Ark. 1953), the federal district court explained:

> Although the law creating the homestead right should be liberally construed in the debtor's favor, it should not be so applied or construed as to make the law an instrument for the accomplishment of fraud or imposition. Construction should not be so liberal as to depart from the plain and obvious meaning of the words used in the Constitution or to confer rights upon persons who have not brought themselves at least within the spirit of the Constitutional provisions.

The general rule is that the burden of proving a sufficient occupancy of the property to establish a homestead is upon the party claiming the right to the exemption. *Arkansas Savings and Loan Association* v. *Hayes*, 276 Ark. 582, 637 S.W.2d 592 (1982); *Automotive Supply, Inc.* v. *Powell*, 269 Ark. 255, 599 S.W.2d 735 (1980); *Barnhart* v. *Gorman*, 131 Ark. 116, 198 S.W. 880 (1917); *Gibbs* v. *Adams*, 76 Ark. 575, 89 S.W. 1008 (1906).

"[I]ntention to abandon [a homestead] is an issue of fact, and in such a situation, evidence is rarely clear. . . .

However, the legal presumption is that the homestead right continues until it is clearly shown that it has been abandoned." *Vesper v. Woolsey*, 231 Ark. 782, 785-86, 332 S.W.2d 602, 604-05 (1960). *Accord City National Bank, supra.* The burden is upon one claiming that a homestead has been abandoned to establish that fact. *Melton v. Melton*, 126 Ark. 541, 191 S.W. 20 (1917).

In *City National Bank, supra*, the Arkansas Supreme Court explained that the intention of the one claiming the exemption is central to the determination of such cases:

> The Constitution provides for the homestead, and, when once established, the presumption is that it continues until it is shown by the evidence that it has been abandoned. The question of homestead and residence, being a question of intention, must be determined by the facts in each case, and the [trial court's] finding of fact will not be disturbed unless it appears to be against the preponderance of the evidence.

192 Ark. at 949, 96 S.W.2d at 484.

In *Caldcleugh v. Caldcleugh*, 158 Ark. 224, 250 S.W. 324 (1923), the court dealt with the issue of intent in the context of abandonment of the homestead:

> It is well settled that a removal from the homestead, where there is a fixed and abiding intention to return to it, will not constitute an abandonment of it as a homestead. An abandonment of a homestead is almost, if not entirely, a question of intent, which must be determined from the facts and circumstances attending each case. A removal from the homestead may be caused by necessity or for business purposes, and if the owner has an unqualified intention to preserve it as a homestead and return to it, his removal will not result in an abandonment of the land as a homestead.

158 Ark. at 230-31, 250 S.W. at 326. *Accord Monroe v. Monroe*, 250 Ark. 434, 465 S.W.2d 347 (1971); *Harrison v. Rosensweig*, 185 Ark. 281, 47 S.W.2d 2 (1932); *McDaniel v. Conlan*, 134 Ark. 519, 204 S.W. 850 (1918); *Melton, supra; Stewart v. Pritchard*, 101 Ark. 101, 141 S.W. 505 (1911); *Brown v. Watson*, 41 Ark.

309 (1883); *Euper* v. *Alkire & Co.*, 37 Ark. 283 (1881).

It has also been held, however, that one will be presumed to have abandoned his old home when he leaves it and acquires another, where he resides for a considerable time, in the absence of convincing testimony to the contrary. *Gillis* v. *Gillis*, 164 Ark. 532, 262 S.W. 307 (1924); *Wolf* v. *Hawkins*, 60 Ark. 262, 29 S.W. 892 (1895). "The facts that the absence extended over a period of six years, and that the debtor during that period occupied another house owned by him, tend to show a change of residence, but are not conclusive." *Robinson* v. *Swearingen*, 55 Ark. 55, 58, 17 S.W. 365, 366 (1891). *See also Brown, supra.* Additionally, the abandonment of a homestead may be proved by conduct, circumstances, and actions, as well as by direct testimony. *Harrison, supra; Lilly* v. *Lilly*, 178 Ark. 324, 11 S.W.2d 765 (1928).

This Court recently considered the question of abandonment of a homestead in *Ross* v. *White*, 15 Ark. App. 98, 689 S.W.2d 588 (1985). In that case, we held that the trial judge's decision that the debtor had impressed a homestead on his property and never abandoned it was not clearly erroneous. In *Ross*, the debtor had moved out of state, but had continued to make the mortgage payments on the property, and had occupied and worked on the house during his returns to Arkansas. He had also allowed his sister to move into the house without paying rent. He further continued to pay taxes and was registered to vote in Arkansas and claimed to have never abandoned his Arkansas homestead. However, unlike the instant case, wherein the evidence is conflicting, the debtor's evidence in *Ross* upon the issue of abandonment was uncontradicted.

In the instant case, the evidence as to the appellant's intent in leaving the house on Houston Street and in purchasing and establishing residences on Iola and Cypress Streets is clearly conflicting. However, given the discrepancy between the appellant's claim that his family lived on Houston Street during warm weather and the documentary evidence showing the contrary, as well as the testimony of the pest control company owner and the electric and gas company accountant, it cannot be said that the circuit court was clearly erroneous in its factual determination that the property was not the appellant's homestead. Further, the

appellant's credibility must also be considered in view of his statement that the house on Houston Street had never previously been the subject of a levy of execution when in fact it had been.

 The question of homestead and residence, being a question of intention, must be determined by the facts in each case, and the trial court's finding of fact will not be disturbed unless it appears to be against the preponderance of the evidence. *City National Bank, supra.* Our duty is to give due regard to the judge's opportunity to observe the witnesses and affirm his findings of fact unless they are clearly against the preponderance of the evidence. *Superior Improvement Co.* v. *Mastic Corp.*, 270 Ark. 471, 604 S.W.2d 950 (1980); *Izard County Board of Education* v. *Violet Hill School District No. 1*, 10 Ark. App. 286, 663 S.W.2d 207 (1984); ARCP Rule 52(a). We hold that the judge's decision is neither clearly erroneous nor against the preponderance of the evidence, and therefore, we affirm.

Affirmed.

CRACRAFT, C.J., and GLAZE, J., agree.