## B. Gene BILO *v.* ACME OUTDOOR ADVERTISING COMPANY

CA 88-80                                          765 S.W.2d 12

Court of Appeals of Arkansas
Division II
Opinion delivered February 22, 1989

*James B. Bennett*, for appellant.

*Shackleford, Shackleford & Phillips, P.A.*, by: *Robert D. Trammell*, for appellee.

JUDITH ROGERS, Judge. This case involved the disputed ownership of two outdoor advertising signs that are located on appellant's property, but which were placed on the property by the appellee. The appellant, B. Gene Bilo, appeals the decision of the Union County Circuit Court in favor of appellee, Acme Outdoor Advertising Company, which instituted this action in replevin for the recovery of the two signs. The trial court, sitting without a jury, found that the signs were the personal property of the appellee by virtue of a lease agreement entered into between appellee and appellant's predecessor in title. We agree with the trial court, and affirm.

The two advertising signs in question stand on a lot located at 714 North West Avenue in El Dorado, Arkansas. On October 6, 1965, appellee and the owner of the property at that time, James R. Mitchell, entered into a lease agreement whereby appellee was given exclusive permission to erect and maintain advertising signs on the property. Ownership of the property changed several times, until it was purchased by Dr. D.R. Vyas. On April 21, 1986, Dr. Vyas and appellant, as purchaser, executed a real estate contract for the sale of this lot.

This dispute arose over the ownership of the signs when J. C. Billingsley, president of the appellee company, contacted the appellant in August of 1986 regarding the renewal of the lease which was due to expire in October. Billingsley was told that the lease would not be renewed. It was apparent from their conversations that each claimed ownership of the signs, thus giving rise to the filing of this lawsuit.

At trial, appellant maintained that the signs were annexed to the freehold as fixtures, and thus ownership of the signs passed to

him upon acquiring title to the property. The appellant denied having actual or constructive knowledge of the lease agreement, and the nature of the appellee's interest in the signs. However, the record reflects that appellant was advised by Dr. Vyas, his grantor, that there was a lease agreement with appellee who was paying $600 a year in rent, that the lease was subject to annual renewal in October, and that there was a "30 day notice" provision in the agreement. The real estate contract itself makes reference to the signs as indicated in handwritten additions to the contract. While there was testimony that Dr. Vyas was uncertain as to the specific terms of the lease agreement, appellant claimed that he assumed the signs were included in the purchase of the property, and he made no inquiry into the details of the agreement.

Conversely, the appellee claims ownership of the advertisement signs as personal property pursuant to the 1965 lease agreement, which provides:

> All advertising sign boards placed on the premises under this agreement shall remain the property of the individual or company to which permission is granted, and may be removed by it at any time. It is agreed that, after the first year, the grantor of this permission may order the advertising signboards removed at any time by giving the grantee 30 days notice in writing, in case the grantor sells the premises or improves same by erecting a building on said premises, and upon consummation of said sale, or improvement thereon, the grantor shall refund to the grantee, the rent paid in advance, prorata, from the time of the removal of the boards.

In support of its claim, appellee presented evidence that it had paid personal property taxes for the signs, and that it had applied for and received an outdoor advertising permit from the State of Arkansas. Appellee also showed that the lease had been' renewed with the various owners of the property over the years, including Dr. Vyas.

In holding that the advertising signs were the personal property of the appellee, the trial court found that the appellant had notice of the existence of the subsisting lease agreement, and thus was not an innocent purchaser. The trial court further found

that the appellant's failure to ascertain the terms of the agreement did not deprive appellee of its ownership of the signs as reserved in the lease.

For reversal, appellant contends that the evidence was insufficient to sustain a finding of notice of the lease agreement concerning the signs, and that the trial court misconstrued certain handwritten portions of the real estate contract between appellant and Dr. Vyas. Upon review, the findings of the trial court will not be reversed unless they are clearly against the preponderance of the evidence. *Smith* v. *Flash TV Sales & Service, Inc.*, 17 Ark. App. 185, 706 S.W.2d 184 (1986); Ark. R. Civ. P. 52(a).

The primary issue on appeal is whether the appellant took title to the property subject to the terms and conditions of the lease agreement. According to the decision of *Hankins* v. *Luebker*, 224 Ark. 425, 274 S.W.2d 356 (1955), the law is well settled that parties by agreement may treat as personal property machinery and improvements which would otherwise be part of the realty, and thus convert it into personal property. Where fixtures have been severed from the land by agreement, a subsequent purchaser with notice takes subject to the agreement. *Id.* Guidance can also be found in the decision of *Cochrane* v. *McDermott Advertising Agency*, 6 Ala. App. 121, 60 So. 421 (1912), rendered by the Alabama Court of Appeals. There it was held that agreements severing fixtures from the realty are personal covenants as between the parties that do not run with the land, unless there is anything reasonably calculated to put the purchaser on notice or that would cause inquiry that would lead to notice or knowledge.

The lease agreement at hand discloses the intent to sever the advertising signs from the land and treat them as personal property. As indicated in the *Hankins, supra,* and *Cochrane, supra*, decisions, notice, either actual or implied, is the key element in binding subsequent purchasers to the terms of the agreement.

The trial court found, and we agree, that appellant had notice of a lease agreement concerning the signs. Appellant was told by Dr. Vyas prior to purchasing the property that appellee had a lease for which $600 per year in rent was paid, and which

was subject to annual renewal. He was also advised that there was a 30 day notice provision in the agreement, and the real estate contract by which appellant purchased the property makes specific reference to the signs, and provides that the buyer will honor all lease agreements. Furthermore, the signs themselves have the name "ACME" displayed on them.

Appellant's contention that he was not made aware of the specifics of the lease agreement and the nature of the appellee's interest in the signs has no merit. We hold that appellant was aware of sufficient facts concerning the lease agreement, and therefore had a duty to inquire into the nature and terms of the agreement. Notice of facts putting a man of ordinary prudence on inquiry is tantamount to knowledge of the facts to which the inquiry might lead. *Affiliated Laundries* v. *Keeton, et al.,* 270 Ark. 841, 606 S.W.2d 370 (1980).

Appellant further argues that the appellee failed to put him on notice as to his claim of ownership by not recording the lease agreement. The trial court was aided by the expert testimony of Gibson Sims, who had considerable experience in the area of outdoor advertising. Sims related that it was customary for outdoor advertisers to approach owners of potential advertising sites and to request permission to build and maintain advertising signs on the owner's property. To facilitate this, Sims stated that a ground lease would be obtained in which ownership of the signs would be reserved in the advertisers along with the right of removal, and then space on the signs would be subleased to the advertiser's customers. According to Sims, the standard practice is to obtain a ground lease, erect the signs and sublease the space on the signs to customers. He testified that automatic renewal is accomplished by payment and acceptance of rent rather than redrawing yearly leases and recording them. He further stated that leasing of space on signs owned by a landowner as well as yearly written and recorded leases are not the standard in the industry because these practices are unprofitable.

Appellant's second argument for reversal is based on the trial court's construction of the handwritten portions of the real estate contract entered into by appellant and Dr. Vyas. The appellant argues that the court erred by reading three separate handwritten additions of items as referring to one another, when

they were intended to be read separately. Specifically, the trial court found in paragraph C of the letter opinion that "Dr. Vyas knew of the lease and the same was noted on the Real Estate Contract between Dr. Vyas and Mr. Bilo. It was recorded in pencil or pen '. . . no rent on the signs on the property will be paid 5-30-86—Buyer will handle the existing lease agreement.' "

■ The appellant contends that the "5-30-86" notation and the "buyer will handle the existing lease agreement" were added to separate paragraphs of the contract, and did not pertain to the clause referring to the rent on the advertising signs. We note that the contract uses the word "honor" rather than "handle," but the appellant ignores the fact that the contract expressly makes reference to the signs and the rent to be paid on them, and that in a fourth handwritten addition to the contract in paragraph 16, entitled "Other Conditions," the contract specifically provides that the "[b]uyer will honor all existing lease agreements." We cannot say that the trial court's finding that appellant was not an innocent purchaser and that he should have been put on notice by the express terms of the contract itself is clearly erroneous. Therefore, we hold that the decision of the trial court finding that the advertising signs were the personal property of the appellee is not clearly against the preponderance of the evidence.

AFFIRMED.

CORBIN, C.J., and COOPER, J., agree.