HILDRETH *v.* HILDRETH.

4-7919                                           196 S. W. 2d 353

Opinion delivered July 1, 1946.

*W. A. Singfield,* for appellant.

*McMillan & McMillan,* for appellee.

McHANEY, Justice. Appellants are the collateral heirs of Louisa Hildreth and of S. D. Hildreth who died testate and without issue on July 21, 1944. 'Appellee is the widow and chief beneficiary under the will of said S. D. Hildreth, which also makes provision for monthly payments of $14 each out of his estate to his sister, Lena Trigg, for her lifetime.

Appellants brought this action against appellee to determine the ownership of the southwest quarter of lot 46 of Trigg's Addition to the City of Arkadelphia. The title to this tract was conveyed by T. A. Sloan to Louisa Hildreth some years prior to her death in 1921, and she was residing thereon at the time of her death. The deed to her was lost or destroyed and was never recorded. She was the mother of said S. D. Hildreth, R. A. Hildreth who died in 1927, leaving a widow and no children, and Lena Trigg, and another son and daughter who both predeceased their mother, but each left children or a grandchild, who are parties appellants.

Appellants claim title by reason of a deed to said lot from said Sloan to S. D. Hildreth, R. A. Hildreth and Lena Trigg. This deed recites a consideration of $1 "paid in order to renew or replace a lost deed which (was) executed many years ago by T. A. Sloan to Louisa Hildreth, the grantees herein being the heirs at law of said Louisa Hildreth," and was dated August 1, 1922, and recorded on September 15, 1922.

The complaint alleged that appellants are the owners of said land in certain proportions therein set out and prayed partition and sale thereof. The answer denied the ownership of appellants and alleged exclusive adverse possession of said land for more than 20 years during which time valuable improvements were made by appellee and her husband, payment of all taxes during said time, all to the knowledge of appellants who lived in the vicinity of said property and who observed the acts of S. D. Hildreth in regard to said property through-

out said 20 years, and who have never claimed, demanded or received any rents or protested the making of said improvements, but have sat by and waited until the death of said Hildreth to claim any interest in said land. An intervention was filed in behalf of a great-grandson of Louisa Hildreth and for the widows of a son and a grandson claiming an interest in said land.

Trial resulted in a decree for appellee. The complaint and intervention were dismissed for want of equity and quieted the title to said property in appellee "as heir and residuary legatee under the will of S. D. Hildreth, deceased." The court made these findings: "The court finds that S. D. Hildreth and Maude I. Hildreth were married on September 17, 1924, and shortly thereafter took possession of said land upon which at that time was located a three-room shack and that said S. D. Hildreth and Maude I. Hildreth tore down said three-room shack and immediately began construction of a six-room house and that said S. D. Hildreth and Maude I. Hildreth have been in open, notorious, peaceable and exclusive possession of said lands at all times thereafter and for more than 20 years, and have expended upon improvements on said property during said 20 years $5,739.67 and that the said S. D. Hildreth has paid taxes upon said land beginning with the taxes for the year 1923 and continuing through the year 1943, and has expended the sum of $133.35 for taxes.

"The court further finds that all during the time that S. D. Hildreth and Maude I. Hildreth were living upon said land and making improvements thereon that they were claiming said land adversely to the interest of the plaintiffs and to the exclusion of all other parties and that the claim was a matter of common and general knowledge in that community and was known to the plaintiffs, especially to Richard Albert Hildreth and to Lena Trigg, both of whom lived within 100 feet of the property in question and who were intimately acquainted with all of the activities of S. D. Hildreth and Maude I. Hildreth.

"The court further finds that the defendant, Maude I. Hildreth, actually contributed $1,500 of the original construction cost of the house from her own personal money under the belief that the lands belonged to her husband, S. D. Hildreth, now deceased, and that from time to time said Maude I. Hildreth has contributed from her earnings at least 50 per cent of all of the funds expended for improvements and taxes under the belief that said lands belonged to her husband, S. D. Hildreth.

"The court further finds that the defendant has sustained both (1) the defense that said S. D. Hildreth and Maude I. Hildreth have held said land adversely for more than the statutory time, and (2) that the said S. D. Hildreth and Maude I. Hildreth have expended the sum of $5,739.67 for improvements, which improvements have enhanced the property's present value in the sum of $4,500 and have expended the sum of $133.35 for taxes for all of which the defendant would be entitled to compensation, even if she had not acquired title by adverse possession.

"But the court further finds that the defendant's defense of adverse possession is an absolute and complete bar to all of the claims of any and all of the plaintiffs and that, therefore, this cause should be dismissed with prejudice at the cost of the plaintiffs."

To reverse this decree this appeal is prosecuted, and substantially the only argument is that the decree is contrary to the evidence. With this we cannot agree. The deed to this property is made by Sloan to S. D. Hildreth, his brother, R. A., and sister, Lena Trigg. R. A. Hildreth died in 1927, but he and Lena lived very close to this property and must have known that S. D. and appellee had taken possession thereof shortly after their marriage in 1924, had torn down the 3-room shack standing thereon, filled in the ground which was low and swampy, erected thereon valuable improvements, paid the taxes and openly and notoriously exercised all the acts of ownership without objection by R. A. during his lifetime or by Lena Trigg, or by any of the other appellants, until after the death of S. D.

The general rule is that the possession of a tenant in common is the possession of his co-tenants, and that in order for the possession of a tenant in common to be adverse to his co-tenants, knowledge of such claim must be brought home to them directly or by such notorious acts of unequivocal character that notice may be presumed. *Singer* v. *Naron,* 99 Ark. 446, 138 S. W. 958. In *Jones* v. *Morgan,* 196 Ark. 1153, 121 S. W. 2d 96, it was held, to quote a headnote, that: "Where for more than thirty years co-tenants and those claiming under them permitted land to be held by one of their number who treated the possession in all respects as his own—paying taxes, selling timber, making improvements, executing leases, etc.—and these facts and other facts and circumstances are testified to by numerous reputable witnesses, the chancellor was justified in finding that the tenant in possession held adversely." See, also, *Stewart* v. *Pelt,* 198 Ark. 776, 131 S. W. 2d 644.

Here, as in *Jones* v. *Morgan, supra,* S. D. Hildreth did not go to his brother, R. A., nor to his sister, Lena Trigg, nor to any of the other appellants and say, "I am claiming this land as my own; I deny your interest in it; take notice of my attitude!" Yet, for more than 20 years, "his conduct, his situation, and his actions in dealings affecting the property were tantamount to a declaration of hostility to the claims of all persons," including appellants.

For more than 20 years appellants sat by, knew that S. D. Hildreth and appellee were making permanent and costly improvements; that they were living thereon, paying all the taxes and otherwise exercising all the acts of ownership. It was their duty to speak then, and, not having done so, equity will deny them the right to speak now.

The decree is correct and is accordingly affirmed.

McFADDIN, J., concurs.