COLEMAN v. GARDNER, ADMR.

5-2045                                          330 S. W. 2d 954

Opinion delivered January 18, 1960.

*Claude F. Cooper,* for appellant.

*James M. Gardner* and *Gene Bradley,* for appellee.

CARLETON HARRIS, Chief Justice. This litigation involves the determination of parties entitled to receive the proceeds of a fire insurance policy. Prior to January 1, 1956, J. R. Coleman was the owner of a 54 acre farm in Mississippi County. Coleman and his wife, Willie Jane Goza Coleman, lived on the farm, occupying the premises as their homestead. In November, 1955, the Farm Bureau Mutual Insurance Company issued its fire loss policy in the name of J. R. Coleman and/or Willie Jane Coleman, such policy effective until November 20, 1956. Coleman died January 1, 1956, and left surviving, the widow, and five children by a previous marriage, all of age. Late in January, Mrs. Coleman went to the insurance agent and an endorsement was entered on the policy changing the name of the insured to Willie Jane Coleman. On December 31, 1956, an order was entered by the Probate Court awarding the widow the 54 acre farm as her homestead for and during the period of her natural life. An accounting by the personal representative was subsequently

filed, and the affairs of the estate duly completed.[1]  On
November 20, 1956, the insurance company issued a re-
newal of the policy for the period ending November 20,
1957, and a like renewal was procured by Mrs. Cole-
man in November of 1957.  In the meantime, the widow
had moved from the farm in February of 1957.  For
the year 1958, the property was rented to Denison Wol-
ford, who was living in the house and paying $25 per
month for same.  In May of that year, the house was
destroyed by fire.  The insurance policy was for a sum
not to exceed $3,000, and the premiums, following the
death of Mr. Coleman, had all been paid by Mrs. Cole-
man.  Mrs. Coleman made demand on the company for
payment, and the latter admitted liability in the amount
of $3,000,[2] but refused to pay because Mrs. Coleman's
step-children (children of the deceased J. R. Coleman)
objected, and were making claim to the proceeds.

On June 19, 1958, Mrs. Coleman died, and proceed-
ings were commenced to probate her estate.  James
Gardner was named administrator, and under an order
of the court, the insurance company paid the $3,000 over
to such administrator.  Claim was filed by the Coleman
heirs, J. C. Coleman, Albert B. Coleman, Vera Belle
Coleman Mosley, Emma Sue Coleman Scott, and Mar-
tha J. Woods, for $3,000 (proceeds of the insurance pol-
icy), which was disapproved by the administrator, and
thereafter heard by the court.  On May 22, 1959, the
court disallowed this claim, and this appeal by J. C.
Coleman follows.

For reversal, appellant contends first, that  Mrs.
Coleman did not meet the duty incumbent on a life ten-
ant "to keep the premises in good repair and not to
permit waste", second, that at the time of the fire
which resulted in the loss of the farm dwelling, the life
tenant had abandoned her homestead by virtue of mov-
ing away from said premises, and third, that her in-
terest could not have been more than a dower interest

---

[1] A final accounting covering the period until April 20, 1959, was
filed by the administrator, with a later amendment to the final account,
both of which were subsequently approved.

[2] The company placed a value on the house of $5,000.

in the $3,000, "which could not have been greater than one-third of the $3,000, during her life, or life expectancy."

Relative to his first contention, appellant asserts in his brief:

"* * * that the life tenant in this case, occupied the premises in such a manner and conducted the affairs in such a manner, which permitted waste for which she, or her estate, certainly should be liable.

The destruction of the building on the aforesaid premises, and the taking of the entire amount of insurance, for which it was insured, leaving the remaindermen nothing whatsoever, with which to rebuild, would be waste."

This contention is based upon the assertion that Mrs. Coleman moved a party of questionable character onto the premises, and that this action constituted waste to an extent that the remaindermen were injured, and for such injury, should be compensated. We do not agree with this contention. No oral testimony was taken at the hearing, and the only evidence relating to the tenant Wolford is found in paragraph 5 of the Stipulation. This paragraph reads as follows:

"5. We further state for the record that for the year 1958, the land was rented to Denison Wolford and he was living in the house when it burned and paying $25.00 per month for the house, as well as other considerations for the rental of the farm; that the house that Mr. Wolford had lived in prior to his moving into the house in question, likewise, was destroyed by fire, on other property."

Certainly, we cannot say that the mere act, by a life tenant, of renting a house to one who has previously lived in a house destroyed by fire, is an act which constitutes waste. Bouvier's Law Dictionary, Vol. II, (3rd Revision), page 3433, defines "waste" as:

"Spoil or destruction, done or permitted, to lands, houses, or other corporeal hereditaments, by the ten-

ant thereof to the prejudice of the heir or of him in reversion or remainder.

Any unauthorized act of a tenant for a freehold estate not of inheritance, or for any lessor interest, which tends to the destruction of the tenement, or otherwise to the injury of the inheritance.

An unreasonable or improper use, abuse, mismanagement or omission of duty touching real estate by one rightfully in possession which results in its substantial injury."

It is obvious that the simple act of renting the property to Wolford, under the record before us, cannot be classed as unreasonable, abuse, or mismanagement; nor can it be said that Mrs. Coleman was remiss in any duty to the remaindermen because of this act. While appellant asserts that a party of "questionable character" was moved onto the premises, the assertion is completely bare. We find no merit in this contention.

Nor do we agree that Mrs. Coleman abandoned her homestead simply because she moved away. The only evidence on this point is found in the stipulation, paragraph 1, which reads as follows:

"1. Mrs. Coleman moved from the farm in February of 1957 and was not living in the house when it burned in May of 1958."

The law is, of course, well settled to the effect that merely moving from a homestead does not, in itself, constitute abandonment. In *Butler* v. *Butler*, 176 Ark. 126, 2 S. W. 2d 63, this Court said:

"It is the rule of law in this State, announced by many decisions of this court, that the question of whether there has been an abandonment of a homestead once established, is almost entirely a question of intent on the part of the homestead owner so to do. In other words, in order to constitute an abandonment of a homestead, the owner must leave it with the intention of renouncing and forsaking it, or leaving it never to re-

turn. The law does not require continuous occupation of the homestead to continue it as such."

Further, in quoting from the case of *Colum* v. *Thornton,* 122 Ark. 287, 183 S. W. 205:

"Our Constitution gives the homestead to the widow for life, without any restrictions. It is the settled policy in this State that laws pertaining to the homestead right of the widow and minor children shall be construed liberally in favor of the homestead claimants."

In the case before us, there is no evidence reflecting why Mrs. Coleman moved, or whether she had the intention to forsake and abandon the homestead, or to return. It follows that appellant's argument is without merit.

Appellant's final argument is disposed of by our holding in *Jackson* v. *Jackson, Trustee,* 211 Ark. 547, 201 S. W. 2d 218. There this Court held that a life tenant, insuring her own interest in the premises, at her own expense, and under no obligation under a will to insure for the benefit of the remaindermen, and having made no agreement to do so, is entitled to the proceeds of the policy of insurance free from the claims of the remaindermen. Appellant admits that the *Jackson* case controls his third point, but argues that the rule is a harsh one, and should be overruled or modified. We see no reason to change this holding, which, as appellant admits, conforms to the view of an overwhelming number of jurisdictions. In the *Jackson* case, this Court, quoting from 33 American Jurisprudence, § 332, p. 838, said:

"It is clearly the general rule that where a legal life tenant insures the property in his own name and for his own benefit and pays the premiums from his own funds, he is, at least in the absence of a fiduciary relationship between him and the remaindermen existing apart from the nature and incidents of the tenancy itself, or of an agreement between him and the remainderman as to which of them shall procure and maintain insurance, entitled to the proceeds of the insurance upon

a loss; and the fact that the insurance was for the whole value of the fee is not generally regarded as affecting the right of the life tenant to the whole amount of the proceeds."

Further, quoting from 31 *Corpus Juris Secundum,* paragraph 46, page 59:

"It has been stated, as a general rule, that the life tenant is not bound to keep the premises insured for the benefit of the remainderman or reversioner, unless there is an agreement that he shall do so, or a provision to that effect in the instrument creating the estate; but that either may insure for his own benefit, the tenant for life and the remainderman paying insurance for their respective interests. Ordinarily this is what is done, and it has been held that neither the life tenant nor the remainderman will be benefited by the other's policy."

Still further, from the opinion:

"In Restatement of the Law of Property, Vol. 1, § 123, sub-sec. 2, the rule is thus stated: 'When a policy of insurance against the destruction of, or damage to, land or structures thereon, exists only for the protection of the interest of the owner of the estate for life, the owner of the estate for life has a privilege to retain, as against all claims of owners of future interests in the same land or structures, all moneys received by such owner as the proceeds of such policy of insurance.' "

As stated, this is clearly the majority rule. In fact, only a very few jurisdictions hold otherwise. In the case before us, Mrs. Coleman was the life tenant. Appellant was a remainderman. Each had an insurable interest, and the life tenant insured her interest, paying for such insurance from her own funds. The remaindermen did not insure their interest. No agreement was in effect relative to insurance. Clearly, under our holding, Mrs. Coleman was entitled to the entire proceeds of the policy.

Affirmed.