VESPER *v.* WOOLSEY.

5-2089                      332 S. W. 2d 602

Opinion delivered March 7, 1960.

*Jack Yates, Douglas O. Smith, Jr., Warner, Warner & Ragon,* for appellant.

*Jeta Taylor, Shaw, Jones & Shaw,* for appellee.

CARLETON HARRIS, Chief Justice. This is an appeal from a decree of the Franklin Chancery Court which found that appellants and appellees hold certain lands in Franklin County as tenants in common. The court, in its decree, found that appellees, Harold Woolsey and Elmer Childers, each own an undivided one-fourth interest, and appellants, Jack Vesper and Beatrice Vesper, own an undivided one-half interest as tenants by the entirety. The court found that the lands were not subject to division in kind without material prejudice to the rights of the parties (this fact was stipulated), and further held that appellants were entitled to reimbursement for certain expenditures made for improvements in the amount of $627.38. The property was ordered sold, and the net proceeds (after cost of action and sale, and reimbursement) ordered divided according to the respective interests of the parties, heretofore set out. From such decree, appellants bring this appeal.

The record reflects that Ernest Locke purchased the property in question on October 27, 1917, and he and his wife, Pearl, lived on the premises until Mr. Locke's death in April, 1925. He died without issue, leaving as his heirs two brothers, Cecil and Tom Locke, and one sister, Susie Locke Childers. Sometime after the death of her husband, Pearl Locke moved from the premises and lived with her parents for two or three years, renting the property during this period. In 1929, Pearl Locke married R. E. Protheroe. The evidence at this point is slightly in conflict relative to where Pearl and Protheroe lived for the first few months following their marriage. However, it is established that within three to six months, they were living on the property in question, and continued to live there for the balance of their lives. In 1934, the lands were forfeited for nonpay-

ment of taxes, and the Protheroes obtained a tax deed from the State in 1938. In 1939, these lands again forfeited for nonpayment of taxes, and a redemption deed was issued by the State to R. E. Protheroe and Pearl Protheroe. During the period of their occupancy, the Protheroes executed a right-of-way to the Arkansas Western Gas Company, giving the latter the right-of-way to lay a pipe line and to construct telegraph and telephone lines over the property, and executed three different oil and gas leases (two to the same company and one to Alfred McLane). These leases ran for a period of five and ten years, and all contained a clause to the effect that "if said lessor owns a less interest in the above described land than the entire undivided fee simple mineral estate therein, then the royalties and rentals herein provided shall be paid the lessor only in proportion which lessor's fee simple mineral interest therein bears to the whole and undivided mineral estate in the lands."

In November, 1954, Pearl Protheroe died without issue, leaving as her heirs a sister, Maude Benson, and the children of two deceased brothers. Protheroe continued to live on the premises, and executed two more oil and gas leases to the gas company, similar to the ones theretofore executed. In April, 1958, Protheroe died. Under the terms of his will, the property was devised to appellants. Taxes on the lands, after the death of Locke, were paid by Pearl until the tax deed was obtained in 1938, following which, they were paid in the name of R. E. Protheroe. Following Pearl's death, Protheroe continued to pay the taxes until his death. In May, 1958, Cecil and Tom Locke[1] and Susie Locke Childers (brothers and sister of Ernest Locke), conveyed, by quit-claim deed, their interest in the property to appellees. In October, 1958, appellees instituted suit praying partition of the lands. Appellants, in their pleadings, denied that appellees held any interest, and

[1] These brothers had been non-residents of the state for a long number of years.

contended that they (the Vespers) were the sole owners of the property in question.[2]

For reversal of the court's decree, appellants assert that "Appellees' claim is barred by both the two year and seven year statute of limitations (Ark. Stats. 1947, § 37-101 and Ark. Stats. 1947, § 34-1419). Appellees' claim is barred by the doctrine of laches." We proceed to a discussion of these contentions.

Relative to the first point, appellants argue that the proof reflects that the claim of Pearl and R. E. Protheroe was adverse to the claim of appellees and their assignors for more than the statutory seven year period. In so contending, appellants rely upon the tax deed, tax payments, right-of-way grant, and the oil and gas leases executed by the Protheroes, asserting that these acts were evidence of the intention to exclude the cotenants. It is further argued that the claim of appellees is barred by the two year tax statute of limitations.

Upon the death of Ernest Locke, Pearl Locke became endowed with an undivided one-half interest in the estate, the heirs of Locke becoming the owners of the other undivided one-half interest, the latter interest, however, subject to the homestead right of Pearl Locke. Pearl, therefore, in addition to holding as tenant in common, also held the privilege of possession because of her homestead right in the property. It is asserted that Pearl abandoned the property as a homestead, and that this interest passed out of the picture, but we do not agree. The record reflects that she stayed away from the property two or three years, living with her parents, but there is no evidence that she intended, in moving away, to abandon the Locke property as her homestead. Following her marriage to Protheroe, she returned to the premises within a few months. Of course, intention to abandon is an issue of fact, and in such a situation, evidence is rarely clear; nor, in the case before us, does the evidence clearly reveal Pearl's intention. However, the legal presumption is

---

[2] Subsequent to the filing of the suit, appellants obtained conveyances from the heirs of Pearl Locke Protheroe.

that the homestead right continues until it is clearly shown that it has been abandoned. In *City National Bank* v. *Johnson,* 192 Ark. 945, 96 S. W. 2d 482 (1936), the appellee was absent from her homestead for four years, during which time she lived in Oklahoma. This Court held that the homestead was not abandoned, and stated:

"All presumptions are in favor of the preservation and retention of the homestead. When property has been impressed with the homestead character, it will be presumed to continue so until its use as such has been shown to have terminated. 29 C. J. 961.

As we have said, the exemption laws are to be construed liberally. The Constitution provides for the homestead, and, when once established, the presumption is that it continues until it is shown by the evidence that it has been abandoned. The question of homestead and residence, being a question of intention, must be determined by the facts in each case, and the chancellor's finding of fact will not be disturbed unless it appears to be against the preponderance of the evidence."

See also *Harris* v. *Ray,* 107 Ark. 281, 154 S. W. 499 (1913). The widow is permitted to rent the homestead, as was done in this instance by Mrs. Protheroe. *Garibaldi* v. *Jones,* 48 Ark. 230, 2 S. W. 844. *Coleman* v. *Gardner, Admr.,* 231 Ark. 521, 330 S. W. 2d 954. There is no requirement of continuous occupation of a homestead to continue it as such. *Butler* v. *Butler,* 176 Ark. 126, 2 S. W. 2d 63. Furthermore, the homestead right acquired from Locke was not forfeited by her remarriage to Protheroe. *Stone* v. *Stone,* 185 Ark. 390, 47 S. W. 2d 50.

Nor do we agree that appellants' claim is strengthened by the tax deed obtained from the state by the Protheroes, the tax payments, or the execution of the various leases heretofore referred to. With respect to the deed, aside from the fact that it contains only a part description, we have repeatedly held that the acquirement of a tax title by a tenant in common operates as a redemption for the benefit of all the tenants. *Sanders* v. *Sanders,* 145 Ark. 188, 224 S. W. 732. *Spikes*

v. *Beloate,* 206 Ark. 344, 175 S. W. 2d 579, and cases cited therein. In order for the possession of a tenant in common to be adverse to his co-tenants, knowledge of such claim must be brought home to them directly or by such notorious acts of unequivocal character that notice may be presumed. *Hildreth* v. *Hildreth,* 210 Ark. 342, 196 S. W. 2d 353. We think the evidence insufficient to establish this notice.

Be that as it may, there is even a stronger reason why the deed and tax payments did not enhance the title of Pearl and R. E. Protheroe, or serve as the basis for a claim of adverse possession. We have already pointed out that Pearl Protheroe did not lose her homestead right in the property, but rather maintained same until her death. Accordingly, even without her status as a tenant in common, she had the absolute right to possession of the premises for life, and appellees and their assignors were without authority to demand, or to enter onto, the premises, until her death. In *Ingram* v. *Seaman,* 223 Ark. 414, 267 S. W. 2d 6 (1954), we said:

"But Mr. Ingram claims that the deeds he received from the State and the Improvement Districts set in motion the Statute of Limitations against the remaindermen. A widow, having what is similar to a life estate in the homestead, has the duty to pay the taxes, and she cannot remain in possession and acquire a tax title adverse to the remaindermen. See *Inman* v. *Quirey,* 128 Ark. 605, 194 S. W. 858. Thus Mrs. Paralee Seaman Ingram could not have acquired a tax title adverse to the plaintiffs."

Further, in the Opinion:

"In 41 C. J. S. 765, the rule is stated:

'The purchase by a husband of an adverse claim to his wife's land inures primarily to the benefit of her title, and to his benefit only so far as his marital interests are concerned. Thus a husband cannot acquire a tax title to his wife's lands, * * *.' "

Summarizing our views relative to appellants' primary contention, we find that Pearl Protheroe not only held as a tenant in common, but also held the property as a homestead, and was entitled to its possession for her natural life; further, that since the tax title acquired by the Protheroes amounted to a redemption, the two year statute of limitations on tax sales has no application, *Sanders* v. *Sanders, supra*; nor could a claim of adverse possession for the seven year period be anchored on the tax title. The execution of the instruments did not constitute "such notorious acts of unequivocal character" that notice might be presumed, and there is no evidence that a claim of adverse ownership was "brought home" to the Locke heirs directly. The possession of the land by Pearl Protheroe was entirely consistent and in conformity with the rights and interest that she held.

In *Watson* v. *Hardin,* 97 Ark. 33, 132 S. W. 1002, we said:

"The testimony adduced upon the trial of the case proved that Rachel Watson retained possession of the land after the death of Steve Watson solely by reason of the fact that she was his widow. Her claim to the land was derived from Steve Watson, and was in recognition of his right and title thereto. Her claim was therefore in recognition also of the interest of the heir of Steve Watson, if he had an heir. In its inception her claim of possession of the land was not hostile to the right or interest of the heir of Steve Watson, but was perfectly consistent and in conformity with such right and interest. It is true that her claim and possession might have been of such a nature as to amount to an entire disseizion of the heir and an entire denial of his rights, so as to result in an acquisition of title by adverse possession; but, before her possession could become adverse, it was necessary for her to first repudiate the title of Steve Watson and to disavow any claim thereto as his widow; and it was also essential that notice of such disavowal by heir of title as widow should be brought home to the heir. If Rachel Watson acquired possession of the land as widow of Steve Watson, and therefore in conformity with the right and interest of

his heir and not in opposition to such interest, then, in order to constitute possession that would be adverse, it was incumbent upon appellee to prove that she disclaimed title in Steve Watson, under whom she acquired the possession, and that she claimed actual possession thereof hostile to that title and to the heir, of which he had notice; * * *.''

Let it be remembered that the Locke heirs *had no right of action for possession of the premises in controversy until a termination of the homestead estate held by Pearl Protheroe.* Davis v. *Neal,* 100 Ark. 399, 140 S. W. 278.

In view of the italicized language in the preceding paragraph, there was no reason for appellees to assert a claim, and they are not affected by the doctrine of laches. Mr. Protheroe lived on the premises four years following his wife's death. The fact that no suit was instituted during that period does not call for an application of the doctrine. In *Walker* v. *Ellis,* 212 Ark. 498, 207 S. W. 2d 39 (1948), this Court said:

''Where there is no intervening equity which of itself requires application of doctrine of laches, a court of equity ordinarily will not divest the owner of his title to land for laches unless he fails to assert such title for a period at least equal to that fixed by the statute of limitations.''

Here, Protheroe suffered no loss because suit was not instituted; to the contrary, he was privileged to live on the property. Appellants received reimbursement for improvements made by him. In addition, Protheroe was a co-tenant, and in *Inman* v. *Quirey* (cited in the quotation from *Ingram* v. *Seaman, supra*), we held that the possession of one co-tenant is the possession of all, and laches cannot bar the right of entry to a co-tenant until the latter's disseizin has been effected by some notorious act of ouster brought home to his knowledge.

No reversible error appearing, the decree is affirmed.

JOHNSON, J., dissents.